[No. 3-573A61. Filed December 26, 1974. Rehearing denied January 29, 1975. Transfer denied March 26, 1975.]

*Harriette Bailey Conn*, [*Mrs.*], Public Defender of Indiana, *William B. Bryan*, Deputy Public Defender, for appellant.

*Theodore L. Sendak*, Attorney General, *David A. Miller*, Deputy Attorney General, for appellee.

STATON, J.—Berry's petition for post-conviction relief was denied by the trial court. Before his robbery conviction, he had entered a special plea of insanity. His plea averred that he had suffered from chronic alcoholism and emotional instability at the time of the robbery. The State offered observational evidence of Berry's demeanor during and after the robbery. In the opinion of court-appointed medical experts, Berry was "legally sane" when the robbery was committed. The trial court gave the jury the following instruction:

> "The law presumes that a man is of sound mind until there is some evidence to the contrary. In prosecutions for offenses against the law, an accused is entitled to an acquittal if the evidence engenders a reasonable doubt as to his mental incapacity at the time the alleged offense is charged to have been committed. Evidence rebutting or tending to rebut the presumption of sanity need not, to entitle the defendant to an acquittal, preponderate in favor of the accused. It will be sufficient if, when considered in connection with all of the evidence introduced in this case, it raises in your mind a reasonable doubt."

Berry's robbery conviction was affirmed by the Indiana Supreme Court. *Berry* v. *State* (1968), 251 Ind. 494, 242 N.E.2d 355. Approximately four years later, the Indiana Supreme Court overruled *Berry* v. *State,* *supra,* which had approved of the above instruction and adopted a new rule that would have required Berry's conviction to be reversed. *Young* v. *State* (1972), 258 Ind. 246, 280 N.E.2d 595.

We consider the retroactive application of the new rule, and we conclude that the new rule can not be retroactively applied. The trial court did not err when it denied Berry's petition for post-conviction relief from the robbery conviction. We affirm.

## I.

### Changing the Rule

Berry's appeal to the Indiana Supreme Court raised his contention that the trial court's presumption of sanity in-

struction constituted prejudicial error and required the reversal of his conviction. He argued that the introduction of any admissible proof tending to demonstrate legal insanity was sufficient to wholly neutralize the presumption of sanity and rendered the presumption an improper subject for jury consideration. In *Berry* v. *State* (1968), 251 Ind. 494, 242 N.E.2d 355, the Supreme Court rejected Berry's contention and held that the trial court's duty to exclude a jury instruction pertaining to the legal presumption of sanity arose only upon the defendant's introduction of "credible evidence" to support his insanity defense. In affirming Berry's conviction, the Court determined that there was sufficient evidence in the record to support the jury's apparent conclusion that the proof of insanity adduced at trial was not worthy of belief.

Approximately four years later, the Supreme Court had an occasion to reconsider its decision in *Berry* v. *State, supra.* In *Young* v. *State* (1972), 258 Ind. 246, 280 N.E.2d 595, four of the Justices agreed that a defendant, who relies upon a special plea of insanity as an affirmative defense, satisfies his evidentiary burden of negating a legal presumption of sanity upon the introduction of any "competent evidence" on the issue of insanity. The *Young* majority, in explicitly overruling *Berry,* held that an instruction of the jury concerning the legal presumption of sanity subsequent to a defendant's introduction of admissible evidence in support of his insanity defense was reversible error.

In his post-conviction petition, Berry contends that the Supreme Court's subsequent decision in the *Young* case requires the reversal of his conviction. There is no doubt that the record of Berry's trial discloses a clear violation of the *Young* rule. In light of Berry's introduction of competent evidence in support of his insanity defense, the *Young* rule would have prohibited the trial court from instructing the jury as to the legal presumption of sanity. But, Berry's assertion that the *Young* decision requires a reversal of his conviction, at a trial which occurred some four years before *Young*

was decided, is not dispositive of this appeal. The majority opinion in *Young* was silent on the question of whether the new rule adopted by the Supreme Court was to be applied retroactively to criminal convictions finalized prior to the effective date of the *Young* decision, or was to be limited to a prospective application. Thus, this Court must decide whether the *Young* rule governs appeals in cases which, like the one before us, reached trial prior to the date of *Young*.

## II.

### Retroactive Application

The Supreme Court's decision in *Young* was clearly based upon non-constitutional policy considerations; the majority opinion contains no reference to either federal or state constitutional provisions. As a matter of federal constitutional law, it has been held that a State may validly impose on a criminal defendant the burden of proof on the issue of legal sanity. *Leland* v. *Oregon* (1952), 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302. Moreover, it is clear that the Supreme Court is under no constitutional compulsion to apply any newly formulated rule of criminal procedure either prospectively or retroactively. *E.g., Linkletter* v. *Walker* (1965), 381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601; *Great Northern Railway Co.* v. *Sunburst Oil & Refining Co.* (1932), 287 U.S. 358, 386, 53 S.Ct. 145, 77 L.Ed. 360. While the retroactivity issue must be determined as a matter of state law, principles developed in a long line of United States Supreme Court decisions concerning the retroactive application of constitutionally mandated rules of criminal procedure provide enlightening guidelines.

In discussing the issue of retroactivity, the United States Supreme Court has referred to a three prong test, which focuses upon: (1) the purpose of the new rule of law (2) reliance by the courts for authority on the old rule; and (3) the effect of retroactive application on the system of criminal justice. Indiana Supreme Court decisions concerning the retroactivity of new constitutional rules of criminal pro-

cedure have employed an identical analytic framework. *See, e.g., Enlow* v. *State* (1973), 261 Ind. 348, 303 N.E.2d 658, *Monserrate* v. *State* (1971), 256 Ind. 623, 271 N.E.2d 420; *Fossey* v. *State* (1970), 254 Ind. 173, 258 N.E.2d 616. But, for purposes of our decision in this case, it is important to note that the very same analytic elements have been used by the majority of federal and state courts when confronted with the retroactivity issue in the context of newly adopted non-constitutional rules of criminal procedure. *See, e.g., United States* v. *Kaylor* (2d Cir. 1974), 491 F.2d 1133; *Korenfeld* v. *United States* (2d Cir. 1970), 451 F.2d 770; *People* v. *Sanders* (1974), 56 Ill.2d 241, 306 N.E.2d 865; *People* v. *McGreevy* (1974), 52 Mich. App. 52, 216 N.W.2d 623.

The following discussion of the countervailing considerations for and against either retroactivity or prospectivity demonstrates the nature of the problem confronting us in deciding the retroactivity question. When a choice is acknowledged between giving some retroactive effect, or none at all, a line should be drawn between the rules which are to be afforded such retroactive application and those which are not, accompanied by some realistic basis for the distinction. Therefore, in arriving at some principled basis for making such a distinction, it is necessary to explore existing case law as to the appropriate policy grounds which govern the issue of retroactivity.

Once the United States Supreme Court had established that the Constitution neither prohibited nor required retroactive application of new criminal procedural guarantees, some method of analysis was needed to determine questions in any given case. The Court's response to this need has become known as the *Linkletter-Tehan* test. *See, e.g., Tehan* v. *United States ex rel. Shott* (1966), 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453. The test encompasses three essential considerations which the Court endeavors to balance. The first consideration is the purpose which the new rule purports to advance. The second consideration is the extent

of reliance by law enforcement agencies on the old rule. The third consideration is the probability of adverse effects, if any, that retroactive application would have on the administration of criminal justice. With some consistency, the Court has attempted to apply this test on a case-by-case basis since the test's formulation in 1965, and its expansion in 1966. The most important of the *Linkletter-Tehan* test considerations is the purpose of the newly adopted rule of criminal procedure. "Purpose" will be examined last in our analysis of the *Linkletter-Tehan* factors: reliance, burden and purpose.

## A. *Old Rule Reliance*

The reliance consideration of the *Linkletter-Tehan* test involves the reliance of law enforcement officers as well as the reliance of the judicial system upon the operational finality of the old rule. Reliance of law enforcement officers and of the judicial system are interrelated, since there would be no reliance by law enforcement officers if the courts had not, either explicitly or tacitly, approved law enforcement procedures by judicial decision. Furthermore, since reliance also includes judicial reliance, it is closely aligned with burdening the administration of justice, another consideration in the *Linkletter-Tehan* test.

The reliance consideration upon which the Court has focused in applying the *Linkletter-Tehan* test is viewed as either being justified or unjustified and extensive or slight. *See e.g., Roberts* the judicial system are interrelated, since there would be no reliance by law enforcement officers if the courts had not, either v. *Russell* (1968), 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100. The justification variable seems to depend in great part on the extent to which the announcement of the new rule was foreshadowed and reasonably should have been anticipated by the courts. The reliance consideration seems to depend primarily upon a finding that the reliance was justified. If found to be unjustified, reliance by law enforcement officers will be given little weight in deciding the retroactivity question, irrespective of the magnitude of such reliance. In addi-

tion, even if the reliance is determined to be justified, the reliance consideration will be given little weight in deciding the retroactivity question in those situations in which that reliance has been slight. As a consequence, if the reliance is justified but slight or if the reliance is found unjustified regardless of its magnitude, more weight will likely be given to the consideration of the possible burden on the administration of justice.

## B. *Burden on the Administration of Justice*

Another important and related factor in determining the retroactivity question is the burden that retroactivity is likely to impose on the courts. Retroactive application of a new rule could cause a great burden on the administration of justice by increasing the volume of retrials raised by post-conviction relief or by reversal of convictions on direct appeal. The rule laid down in *Mapp* v. *Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1091, rendering unconstitutionally obtained evidence no longer admissible in state criminal trials, is an example of a new rule which could cause this problem if retroactively applied. Furthermore, such application could cause an even greater burden on the judicial system since crucial witnesses and tangible evidence might be unavailable at a retrial. Although the consideration of burdening the administration of justice merits attention, most courts have tended to find it non-determinative in situations initially deemed worthy of retroactive effect in terms of purpose. *See, e.g., Jackson* v. *Denno* (1964), 378 U.S. 368, 406, 84 S.Ct. 1774, 12 L.Ed.2d 908. This initial determination of whether a given decision is worthy of retroactive effect will generally be made by a careful consideration of the purpose which the new rule purports to advance and the extent to which retroactivity would advance that purpose.

## C. *The Purpose of the Rule*

When the Supreme Court of the United States has been confronted with the retroactivity question, its first, and

perhaps most important consideration, has been whether the purpose of the new rule can be practically accomplished by retroactive application. The Court has analyzed the purpose of the new rule in terms of two key aspects of procedural due process. The first aspect is that of insuring the reliability of the guilt determining process. The second aspect is that of insuring respect for individual rights and liberties.

If the primary purpose to be advanced is the reliability of the guilt determining process, the Court has begun its analysis by emphasizing the fundamental importance of the protections in the criminal justice system aimed at safeguarding the liberty and freedom of the criminal defendant. *See, e.g., Johnson* v. *New Jersey* (1966), 384 U.S. 719, 727-28, 86 S.Ct. 1772, 16 L.Ed.2d 882; *Spano* v. *New York* (1959), 360 U.S. 315, 320-21, 79 S.Ct. 1202, 3 L.Ed.2d 1265. With the importance of preservation of individual liberty in the context of our accusatorial system established as a basic constitutional premise, the Court has been led to acknowledge the grave responsibility which society must accept when it subjects criminal defendants to the possibility of penal punishment. Consequently, the Court's conclusion is that the only justification which a society can possibly have for depriving a member of his liberty is that the accused individual is guilty beyond a reasonable doubt of the offense charged, in a legal as well as a factual sense. *See, e.g., Linkletter* v. *Walker* (1965), 381 U.S. 618, 639, 85 S.Ct. 1731, 14 L.Ed.2d 601; *Jackson* v. *Denno* (1964), 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. Thus, the adoption and declaration of a new standard for the application of a procedural guarantee which places the guilt of any accused member of society in doubt generally will demand retroactive application and consequent retrial.

When the primary purpose of the new procedural rule has been to enhance individual freedom by the enforcement of constitutional protections, the Supreme Court's analysis has been somewhat divergent. Generally, the Court has reasoned that because retroactive application of a new rule can not

operate to rectify a prior infringement of individual freedom, such retroactive application can not be justified. *See, e.g., Johnson* v. *New Jersey* (1966), 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882; *Tehan* v. *United States ex rel. Shott* (1966), 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453. In these cases, prospective application is justified on the rationale that employment of a new standard or remedy can only serve as a deterrent to future official infringement upon individual freedom.

### D. *Other Factors*

A case-by-case determination of whether a new rule of criminal procedure should be retroactively applied may entail other decisional factors which have not been discussed in the reported cases. This Court may wish to consider whether the purpose of the new rule was to cure a serious and prejudicial defect in the fact-finding process, or whether the new rule was designed to correct a minor imbalance in trial practice. In this context, it may be appropriate to ask: Did the prior erroneous rule *seriously* impair the reliability of the guilt-determining process? If there is a strong probability that the use of the new procedural standard could materially affect the result of a retrial, this circumstance would indicate that the new rule should be accorded retroactive application. On the other hand, if the new rule's application on retrial would not significantly alter the nature and amount of evidence to be considered by the trier-of-fact, then it might be concluded that the collateral burdens created by retroactive application outweigh the possible benefits of a redetermination of guilt.

Another factor might be the nature of the new procedural rule in the context of judicial review of past convictions. Some procedural rules govern aspects of trial practice which have evolved into hard and fast standards. For example, an in-custody confession obtained in the absence of prior *Miranda* warnings is a *per se* procedural violation. A reviewing court

could immediately recognize and correct such a procedural error without considering the specific factual circumstances surrounding the invalid confession. In contrast, other procedural rules are of a fact-sensitive nature; a judicial determination as to an alleged infringement of this type of procedural safeguard calls for a detailed examination of all the facts relevant to the rule's application. Paradigms of this procedural rule arise in the area of Fourth Amendment restrictions on the law of search and seizure. This simple distinction among the rules of criminal procedure may have a significant impact on the retroactivity issue.

In reaching a decision as to the propriety of a retroactive application of a new rule, the Court should make some practical assessment of the probable result in terms of both the ease of applying the new rule to past convictions, and the number of retrials which would likely result from allowing prisoners to raise the new rule as a ground for reversal. A new procedural rule which could be utilized as a standard of review irrespective of the particular factual circumstances of each prior conviction would be more deserving of retroactive application, since the court could be assured that a significant number of petitioners, whose convictions were tainted by the old procedural defect, would be entitled to new trials. On the other hand, retroactive application of a procedural rule of a fact-sensitive nature might result in the invalidation of only a negligible number of prior convictions and would entail a much greater expenditure of judicial resources in passing upon the merits of the necessary post-conviction relief petitions.

## III.

### Conclusion

The *Young* rule was designed to improve the reliability of the guilt determining process. The *Young* majority recognized that it was improper and prejudicial to instruct a jury

as to the existence of the legal presumption of sanity after a defendant's competent proof on the issue of insanity had wholly negated the legal significance of the presumption. Thus, the purpose of the *Young* rule was to prevent a jury from weighing the legal presumption of sanity to the State's advantage in cases where the presumption was without evidentiary value. While the *Young* opinion would appear to indicate that the mere instruction of the jury as to the presumption of sanity is *per se* reversible error when the defendant satisfies his burden of producing evidence on the issue of insanity, we do not feel that the cumulative improvement of reliability brought about by *Young* justifies its retroactive application in this case. The instruction, while defective under *Young,* nevertheless did attempt to advise the jury that they should acquit the defendant by reason of insanity unless they found from a consideration of all the evidence that he was sane beyond a reasonable doubt. Furthermore, the State adduced some answering proof on the issue of insanity at Berry's trial. It, therefore, does not appear that the trial court's improper instruction seriously impaired the reliability of the jury's determination of guilt. Moreover, we believe that jury determinations in those cases tried prior to *Young* where the State adduced some evidence of legal sanity will not be subject to serious doubt as to reliability, even though the verdict was tainted by the jury's improper consideration of the presumption of sanity. We would deny retroactive application of the *Young* rule to those cases.

Prior judicial reliance on the *Berry* rule, which the *Young* decision discredited, was both justified and extensive. It should be noted that *Berry* was decided four years before *Young* by a unanimous Supreme Court. There was no intimation in any intervening decision that the jury instruction validated in *Berry* was judicially suspect or ripe for reappraisal. Moreover, it seems likely that the *Berry* instruction was probably a variant of a widely used pattern jury instruction. Thus, the Court's decision in *Young* undoubtedly came as a surprise to

Indiana's trial judges; there is no way they could have anticipated it.

Retroactive application of the *Young* rule would entail post-conviction review of a large number of convictions, many of which could have occurred over ten years ago. The mere lapse of time between the finalizing of these convictions and a potential retrial resulting from retroactive application of the *Young* rule could impose a severe burden on prosecutorial officials. There is a real danger that the unavailability of witnesses and tangible evidence that might occur as a result of this lengthy period intervening between conviction and retrial would render the granting of a new trial tantamount to an unconditional release from custody. This would be too great a burden on the judicial system.

For the reasons stated above, we affirm the trial court's judgment denying post-conviction relief to Berry.

Garrard, J., concurs; Hoffman, C.J., concurs in result.

NOTE.—Reported at 321 N.E.2d 207.