Kathy **JONAITIS**, Appellant (Defendant Below),

v.

**STATE** of Indiana, Appellee (Plaintiff Below).

No. 3–781A179.

Court of Appeals of Indiana, Third District.

July 12, 1982.

Rehearing Denied Aug. 19, 1982.

---

John F. Hoehner, Valparaiso, for appellant.

Linley E. Pearson, Atty. Gen., Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Presiding Judge.

This is an appeal from an order waiving juvenile jurisdiction over Kathy Jonaitis. Following the Porter County Juvenile Court's waiver of jurisdiction, Jonaitis pled guilty to dealing in marijuana, a class D felony,[1] in exchange for an agreement by the State to dismiss two charges of dealing in phencyclidine.[2] She received a two-year sentence which was suspended with certain conditions.

The issues raised by Jonaitis have been combined and restated as follows:

(1) whether Jonaitis was charged with an act that was part of a repetitive pattern of delinquent acts;

(2) whether Jonaitis was beyond rehabilitation under the juvenile justice system;

(3) whether there was sufficient evidence to support the trial court's finding that it was in the best interests of the community that Jonaitis stand trial as an adult; and

(4) whether Jonaitis' Sixth Amendment right of confrontation was denied when the trial court admitted into evidence laboratory reports on the substances delivered by Jonaitis to an undercover police officer.

IC 1971, 31–6–2–4 (Burns Code Ed.) provides:

"(a) Waiver of jurisdiction refers to an order of the juvenile court that waives the case to a court that would have jurisdiction had the act been committed by an adult. Waiver is for the offense charged and all included offenses.

"(b) Upon motion of the prosecutor and after full investigation and hearing, the juvenile court may waive jurisdiction if it finds that:

(1) the child is charged with an act:

---

1. IC 1971, 35-48 4--10 (1981 Burns Supp.).    2. IC 1971, 35–48–4–2 (1981 Burns Supp.).

(A) that is heinous or aggravated, with greater weight given to acts against the person than to acts against property; or

(B) that is a part of a repetitive pattern of delinquent acts, even though less serious;

(2) the child was fourteen (14) years of age or older when the act charged was allegedly committed;

(3) there is probable cause to believe that the child committed the act;

(4) the child is beyond rehabilitation under the juvenile justice system; and

(5) it is in the best interests of the safety and welfare of the community that he stand trial as an adult."

The charges against Jonaitis involved drug transactions on March 1, March 18, and April 24, 1980. Prior to this time, Jonaitis had had no contact with the juvenile justice system. Jonaitis basically contends that before the trial court could find that there was a repetitive pattern of delinquent acts, there should have been evidence of prior referrals of Jonaitis to the juvenile court.

IC 1971, 31–6–4–1(a)(1) (1980 Burns Supp.) provides: "A child commits a delinquent act if, before his eighteenth birthday, he: (1) commits an act that would be a crime if committed by an adult...." The statute does not provide for a fact-finding hearing and judgment. It merely defines "delinquent act." It is this definition which must be applied in waiver hearings.

■ IC 1971, 31–6–4–14 does provide for a fact-finding hearing and judgment in a juvenile delinquency proceeding. In such cases, the State must prove beyond a reasonable doubt that the juvenile committed the delinquent acts. *Matter of Ort* (1980), Ind.App., 407 N.E.2d 1162. This is not a delinquency hearing however. We are concerned here only with the waiver of jurisdiction by the juvenile court. In waiver cases, the State need only prove by a preponderance of the evidence that the prerequisites to the waiver exist. *Imel v. State*

(1976), 168 Ind.App. 384, 342 N.E.2d 897. To accept Jonaitis' definition of "delinquent act" would mean requiring the State to first obtain an adjudication of delinquency, with the required criminal standard of proof, in order to establish by a preponderance of the evidence in the waiver hearing that a delinquent act was committed. This result clearly could not have been intended by the Legislature. To the contrary, the Legislature defined "delinquent act" in IC 1971, 31–6–4–1. The State must establish by only a preponderance of the evidence that the child has committed acts which would be crimes if committed by an adult in order to support the trial court's waiver.

Additionally, this Court and the Indiana Supreme Court both have held that a waiver is not an adjudication of delinquency. To hold otherwise would mean that an adjudication of delinquency would be res judicata in the criminal trial subsequent to any waiver, not to mention the grave double jeopardy problems which would be created by such reasoning.

*See Walker v. State* (1976), 265 Ind. 8, 349 N.E.2d 161, *cert. den.*, 429 U.S. 943, 97 S.Ct. 363, 50 L.Ed.2d 313; *Bey v. State* (1979), Ind.App., 385 N.E.2d 1153 and the cases therein.

■ Jonaitis was charged with two counts of dealing in a Schedule III controlled substance and one count of dealing in marijuana as a result of three separate transactions which occurred on three separate occasions. All three were acts which would be offenses if committed by an adult.[3] The trial court did not err in finding Jonaitis was charged with acts which were repetitive and constituted a pattern of delinquent acts.

Jonaitis also contends that the trial court erred in finding that she was beyond rehabilitation under the juvenile justice system. She alleges that there was insufficient evidence to support such a finding and that the trial court found that she was beyond rehabilitation under the juvenile justice system simply because she was eighteen years of age.

---

3. IC 1971, 35–48–4–2 and IC 1971, 35–48–4–10.

The waiver order states, in pertinent part:

"4. The acts as charged are repitive [sic] and constitute a pattern of delinquent acts occurring on three separate dates. Said child is beyond rehabilitation under the juvenile justice system inasmuch as since she has now turned 18 years of age, should she be found delinquent in the juvenile system, the most restrictive disposition available to the Court would be that of 'probation' or, placing the child under the supervision of the Probation Department. should [sic] such probation in any [sic] be violated by the juvenile, there would be no more restrictive disposition available to the juvenile [sic] Court."

*Record* at 31.

The trial judge did not find that simply because Jonaitis was eighteen years of age she was beyond rehabilitation in the juvenile justice system. Instead, he recognized the limited options for disposition available to him in the juvenile system due to her age, and determined that those options were not adequate for Jonaitis and therefore she was beyond rehabilitation under the juvenile justice system.

██ The question then becomes whether the finding that Jonaitis was beyond rehabilitation under the juvenile justice system was supported by sufficient evidence. It was.

██ In reviewing an order waiving jurisdiction, the appellate court does not weigh the evidence, but looks only to that evidence which supports the trial court's judgment. The record of the waiver hearing may be used to supplement the reasons for waiver as stated by the juvenile judge. *Bey v. State* (1979), Ind.App., 385 N.E.2d 1153.

Martin Swinehart, Juvenile Probation Officer for Porter County, testified as follows:

"Q. All right, Mr. Swinehart, is there any placement in the juvenile system which you think would be appropriate for Kathy Jonaitis?

\* \* \* \* \* \*

"A. At this point, I don't know if I could make an absolute judgment on that. But from the circumstances that I know of and all the information that I have, I don't believe, no, that any of the institutions regarding juveniles, group homes, state institutions, I don't believe there are any that would be appropriate.

"Q. Then what would be the only alternative that would be left for Kathy if she were to remain in the juvenile system?

"A. As in my earlier testimony, I stated that I don't think that I would recommend probation but the only possible alternative would be probation, and under those circumstances, regarding the needs of the juvenile which in this case could possibly be substance abuse, drug abuse counseling, that type of thing. That would be my concern and under the juvenile jurisdiction if she was placed on probation at the time that a violation against that probation would be made, we would have no alternatives at that point. She could not have—there is no clout as far as the possibility of using state institutions like Girls' School or anything like that, and there would be no other possible alternatives. So probation actually would be useless, I would say.

"Q. Do you think that in light of all the testimony and in your opinion, is Kathy a good candidate for rehabilitation within the juvenile system?

"A. No.

"Q. What is your recommendation for disposition in this case?

"A. As I stated earlier, from all the indications I have and all the information I have, it would lean toward and suggest a waiver to adult court.

"Q. Are you saying that you would suggest that?

"A. Yes."

*Record* at 160–163.

It is not necessary for the trial court to recount all possible alternative juvenile dis-

positions available to it before concluding that none are appropriate. The court is aware of its resources. *Strosnider v. State* (1981), Ind.App., 422 N.E.2d 1325. The trial court in this instance could have concluded from the evidence produced that the dispositions available within the juvenile justice system were inadequate in this particular case. There was no error in finding that Jonaitis was beyond rehabilitation in the juvenile justice system.

▮ Likewise, the trial court did not err in finding that it was in the best interests of the community that Jonaitis stand trial as an adult. Because she was involved in a repetitive pattern of delinquent acts and because she was beyond rehabilitation under the juvenile justice system, it was in the best interests of the community that Jonaitis stand trial as an adult.[4] Being beyond rehabilitation in the juvenile system, had Jonaitis not stood trial as an adult, there would have been no means of either prohibiting her actions or making her accountable for her illegal conduct. Therefore, it was in the best interests of the community that Jonaitis stand trial as an adult in order to inhibit drug dealing in the community.

▮ Finally, Jonaitis argues that her Sixth Amendment right of confrontation was denied when the trial court admitted into evidence the laboratory reports on the substances delivered by Jonaitis to the undercover police officer. She claims that the reports were hearsay evidence in that they were prepared by someone other than an in-court witness.

This issue was previously addressed by this Court in *Clemons v. State* (1974), 162 Ind.App. 50, 317 N.E.2d 859. At that time we held that fundamental fairness does not require the exclusion of hearsay evidence in a juvenile jurisdiction waiver hearing.

Jonaitis has demonstrated no reversible error. Therefore, the judgment of the trial court is affirmed.

Affirmed.

4. *See Redding v. State* (1977), Ind.App., 370 N.E.2d 397.

GARRARD, J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I dissent. The General Assembly has provided that a recidivist juvenile, whose repeated commission of delinquent acts demonstrate incorrigibility, forfeits the exemption which the juvenile system has afforded him from the criminal justice system. Ind. Code 31–6–2–4 provides that a juvenile court may waive its jurisdiction if the child is charged with an act that is part of a repetitive pattern of delinquent acts. Equally clear is that the General Assembly provided that no juvenile shall suffer the stigma attached to a judicial finding of delinquency without the State proving beyond a reasonable doubt the commission of a delinquent act. Ind.Code 31–6–7–13(a). Indeed, the General Assembly further has provided that a finding of delinquency can be made only after a hearing in which the child is entitled to certain due process rights. Ind.Code 31–6–3–1.

The Majority holds that these well defined rights are for naught in Kathy Jonaitis's case. While Jonaitis has never been afforded these rights mandated by the General Assembly, she has been stigmatized by the mere allegation that she committed a pattern of delinquent acts justifying the juvenile court's waiver of jurisdiction. The Majority condones the juvenile court's failure to make the statutorily required findings of fact[1] showing the delinquency relapse and supporting its waiver order through an abracadabra sophistry reminiscent of the days when wizardly alchemists reasoned that they could turn dirt into gold. The Majority confuses the two standards of proof defined in Ind.Code 31–6–7–13(a). That statute provides that the commission of a delinquent act can be found only after the State has made proof beyond a reasonable doubt; for all other findings, however,

1. Ind.Code 31–6–2–4(h) requires that the waiver order include specific findings of fact to support the order.

the State must meet only the preponderance of the evidence standard. The Majority, then, concludes that the standard of proof statute is an invitation to turn the waiver statute on its head by allowing the State to avoid not only the required beyond a reasonable doubt standard, but also the very clear purpose and terms of the waiver statute.

By drawing an analogy to the habitual offender statute, the Majority's deliberate obfuscation can be swept away and the real issue addressed. The juvenile waiver hearing is analogous to the habitual offender hearing. Both serve to determine whether the criteria exist to justify enhancing the sentencing and dispositional alternatives for incorrigible, recidivist offenders. Just as the habitual offender finding requires evidence of prior, unrelated felony convictions, so a waiver finding requires evidence of prior, unrelated delinquency judgments which collectively provide the criteria for the waiver. In both proceedings, the acts constituting the criteria for sentencing enhancement must be distinct, and procedurally unrelated to, the act which has brought the offender, once again, before the court. The act which has brought the offender again before the court also triggers the sentencing enhancement proceeding. The Majority deliberately confuses and combines the underlying criteria acts with the act triggering the pending action against the offender. In neither the juvenile waiver nor the habitual offender proceedings are double jeopardy or res judicata issues present. The Majority's reference to *Bey* and *Walker* is nothing more than a decoy to mask the Majority's Houdini-like manipulation of the unambiguous terms of the Juvenile Code.

Again, I emphasize that the State cannot rely on mere allegations resting on acts which never have been judicially determined to be delinquent. This wisdom of allowing only evidence of judicially determined acts appears in Indiana's evidentiary rules defining impeachment of witness credibility. Witnesses can be impeached by evidence only of bad acts reduced to a judicially determined conviction. *Chambers v.*

*State* (1979), Ind., 392 N.E.2d 1156. I cannot believe, as the Majority does, that the General Assembly intended to depart from the wisdom of such a time honored reasoning protecting citizens from mere allegations of criminal or delinquent behavior without evidence of a judicial determination of criminality or delinquency proven beyond a reasonable doubt.

While the Majority may believe that it has struck paydirt in our society's fight against drug abuse, especially among young people, I think otherwise. We are not free to thwart and frustrate the purpose of the Juvenile Code by the artifice of statutory construction. Courts can inspire respect for the law only when they themselves demonstrate respect for the letter and spirit of the law. Certainly, this is so in the juvenile system where young citizens have their first—and hopefully their last—brush against the law. We should not rush to rescue the State when the State, in its own rush to jeopardize a juvenile with a criminal imprimatur, itself ignores the statutory and due process rights of an alleged juvenile offender.