No. 85–5972.  SCHIRO v. INDIANA.  Sup. Ct. Ind.  Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

The trial judge in this case rejected a unanimous jury decision that petitioner's life should be spared, and sentenced him to die. Petitioner's allegations, which call into question the reliability of the judge's sentencing determination, further illustrate why a judge should not have the awesome power to reject a jury recommendation of life. Moreover, a serious inadequacy in the Indiana capital sentencing procedure dramatically distinguishes it from the jury-override procedure that this Court upheld in *Spaziano* v.

*Florida,* 468 U. S. 447 (1984). I must dissent from the Court's decision not to consider petitioner's substantial claims.

I

Thomas N. Schiro was convicted of murder in the course of a rape and, following a hearing on the appropriateness of sentencing him to die, the jury recommended a life sentence. The trial judge, however, rejected the jury's decision and imposed a sentence of death. Upon direct appeal, the Supreme Court of Indiana found that the trial court's findings pertaining to the sentencing did not set out clearly and properly the court's reasons for imposing the death penalty. *Schiro* v. *State,* 451 N. E. 2d 1047, 1056 *(Schiro I),* cert. denied, 464 U. S. 1003 (1983). That court ordered that the trial court make written findings setting out the aggravating circumstance proved beyond a reasonable doubt and the mitigating circumstances, if any, as listed in the state statute. 451 N. E. 2d, at 1056.

In response, the trial court specified one aggravating circumstance, that the jury had convicted petitioner of murder in the course of a rape; it then stated that it found no mitigating circumstances, listing and rejecting each of the statutory mitigating circumstances, even though several were suggested by the evidence. With regard to the mitigating factor concerning a defendant's mental or emotional condition and the impairment of his capacity to appreciate the criminality of his acts, the court found as follows:

> "This Court personally observed the Defendant, while the jury was present, making continual rocking motions, which did not stop throughout the trial except when the jury left the Courtroom. In the Court's outer chambers, out of the presence of the jury, in the eight days of trial, the Court frequently observed the Defendant sitting calmly and not rocking. It is apparent to the Court that this may well have influenced and misled the jury in its recommendation."

On the basis of his own suspicions, not subject to evidentiary requirements or tested by cross-examination, the judge decided that a unanimous jury was wrong and that petitioner should die. The Indiana Supreme Court upheld the sentence of death. 479 N. E. 2d 556 (1985).

## II

In *Spaziano* v. *Florida, supra,* this Court sustained a scheme that gave the judge the power to override the jury's decision to impose a life sentence, provided that the judge could make certain specified findings. The Court relied, in part, on the Florida Supreme Court's anticipated adherence to the so-called *"Tedder* standard." Under *Tedder* v. *State,* 322 So. 2d 908, 910 (Fla. 1975), a Florida trial judge may not reject a jury decision of life imprisonment unless the evidence favoring death is "so clear and convincing that virtually no reasonable person could differ." *Ibid.* This Court believed *Tedder* to be a "significant safeguard," *Spaziano,* 468 U. S., at 465, and was satisfied that "the Florida Supreme Court takes that standard seriously." *Ibid.*

In contrast, the State of Indiana has not committed itself to any comparable safeguard to protect against the arbitrary rejection of a life sentence. On the contrary, the rules governing the scope of appellate review of sentences provide that the appellate court "will not revise a sentence authorized by statute except where such sentence is *manifestly unreasonable,*" and a "sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate . . . ." Indiana Rules Appellate Review of Sentences 1, 2 (emphasis added). Applying these rules to death sentences, the Supreme Court of Indiana specifically declared that it "will not engage in a different standard of review where jury and trial court disagree" concerning the appropriateness of the death sentence. *Schiro I, supra,* at 1058. Thus, while the *Tedder* standard accords the jury's recommendation a presumption of correctness by requiring "clear and convincing" evidence to justify overriding it, the Indiana Supreme Court accords a similar presumption to the judge's sentence, whether it was imposed pursuant to the recommendation of the jury or against it.

This Court has emphasized that a sentence of death must reflect an ethical judgment about the "moral guilt" of the defendant. See *Enmund* v. *Florida,* 458 U. S. 782, 800–801 (1982). "Moral guilt" is a determination that a jury, as representative of the community, is peculiarly well suited to render. But if a prosecutor, even with the substantial tools available to him, see, *e. g., Wainwright* v. *Witt,* 469 U. S. 412 (1985); *Witherspoon* v. *Illinois,* 391 U. S. 510 (1968), is unable to persuade the conscience of the community that death is the appropriate punishment for a particular offense, then that expression on the question of "moral guilt" is

entitled to at least some weight. By according no significance at all to the jury's assessment of the crime and the defendant, either at the sentencing itself or on appeal, Indiana's procedure derogates the historic role of the jury. "*Furman* [v. *Georgia,* 408 U. S. 238 (1972),] and its progeny provide no warrant for—indeed do not tolerate—the exclusion from the capital sentencing process of the jury and the critical contribution only it can make toward linking the administration of capital punishment to community values." *Spaziano, supra,* at 489–490 (STEVENS, J., joined by BRENNAN and MARSHALL, JJ., dissenting in part).

Moreover, the disregard of jury determinations injects a "level of uncertainty and unreliability into the factfinding process that cannot be tolerated in a capital case." *Beck* v. *Alabama,* 447 U. S. 625, 643 (1980). In this case, for example, the judge speculated that the jury's recommendation of life "may well have" resulted from petitioner's propensity to rock back and forth in the presence of the jury. Indiana law does not require the jury to set forth its reasons for recommending a life sentence, so the court could not have known whether the rocking motion had anything to do with the jury's verdict; the court's decision was necessarily speculative. The reliability that this Court has demanded from capital sentencing decisions is totally lacking here, and the "manifestly unreasonable" standard adopted by the Supreme Court of Indiana effectively insulates the sentence from meaningful review.

Because I understand the Eighth Amendment to require, at the very least, that a jury's considered recommendation of a life sentence rather than death not be ignored without some showing that it was unreasonable, I would grant the petition to review Indiana's method of bringing to execution those whose juries believed that they should live.