**Thomas N. SCHIRO, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 07S00–8807–PC–656.

Supreme Court of Indiana.

Feb. 8, 1989.

Alex R. Voils, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

This direct appeal arises from a denial of post-conviction relief. The history of this cause in this court is extensive. On September 12, 1981, Defendant Schiro was found guilty of the offense of murder while committing, and attempting to commit, the crime of rape. The trial court entered judgment of conviction on the jury's verdict. The jury recommended that the death penalty not be imposed but the trial court overruled that recommendation and ordered the death sentence for Schiro. This court affirmed the trial court's judgment. *Schiro v. State* (1983), Ind., 451 N.E.2d 1047. On November 28, 1983, the United States Supreme Court denied Schiro's writ of certiorari to vacate the death penalty. *Schiro v. Indiana* (1983), 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699. On May 11, 1984, Schiro filed an amended petition for

post-conviction relief which was denied by Special Judge James M. Dixon on May 29, 1984. This court affirmed the trial court's denial of post-conviction relief on June 28, 1985. *Schiro v. State* (1985), Ind., 479 N.E.2d 556. On February 24, 1986, the United States Supreme Court denied Schiro's writ of certiorari to vacate the death sentence. *Schiro v. Indiana* (1986), 475 U.S. 1036, 106 S.Ct. 1247, 89 L.Ed.2d 355.

Thereafter Schiro instituted a petition for writ of habeas corpus in the United States District Court Northern District of Indiana, South Bend Division. Judge Allen Sharpe remanded to the state court, allowing Schiro to exhaust all available state remedies as required for federal habeas corpus proceedings pursuant to 28 U.S.C. § 2254(b); *Ex Parte Hawk* (1944), 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572. Subsequently, on March 5, 1987, Schiro filed the instant action, his second post-conviction relief petition. He filed the timely motion for change of venue from the trial court and Monroe County Circuit Judge John Baker was appointed special judge, qualified, and assumed jurisdiction on March 25, 1987. Schiro's petition for post-conviction relief was denied by Judge Baker.

The issues raised in Schiro's direct appeal to this court are:

1. trial court error in dismissing four allegations of error based on a finding they were *res judicata* or waived as available but not taken in direct appeal at the original post-conviction relief petition;

2. ineffective representation of counsel at trial, in the direct appeal, and in the first post-conviction relief petition;

3. the jury's guilty verdict on felony murder was a conclusive finding of lack of intent such that a possible death sentence was foreclosed; and

4. accumulated error on all above issues which amounts to prejudice warranting reversal.

The post-conviction petitioner bears the burden of establishing the grounds for relief by a preponderance of the evidence. Rule PC 1 § 5. The PC 1 hearing judge is the sole judge of the evidence and the credibility of the witnesses. *Popplewell v. State* (1981), Ind., 428 N.E.2d 15, 16. A petitioner who has been denied PC 1 relief is in the position of one who has received a negative judgment; he will not obtain a reversal unless the evidence on this point is undisputed and leads inevitably to a conclusion opposite to that of the trial court. To prevail on a claim of ineffectiveness of counsel, a petitioner must satisfy both sides of a two-prong test. He must prove counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Then he must prove that such substandard performance was so prejudicial as to have deprived him of a fair trial. A fair trial is denied when the conviction or sentence resulted from a breakdown in the adversarial process which rendered the result unreliable. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh. denied* (1984), 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864; *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291.

I

Schiro claims it was erroneous to dismiss four sections of his petition which alleged: a) failure of the statute to provide guidelines for consideration of the jury's recommendation and for appellate review of sentences; b) error in admitting a search warrant, affidavit, and physical items; c) error in excluding a handwritten document; and d) error in providing verdict forms. The trial court found these matters were either *res judicata* or waived as available but not taken in direct appeal or the original PCR petition.

The purpose of the post-conviction relief process is to raise issues not known at the time of the original trial and appeal or for some reason not available to the defendant at that time. Where an item was available to the defendant on direct appeal but not pursued, it is waived for post-conviction review. *Sims v. State* (1988), Ind., 521 N.E.2d 336, 337. An issue which is raised and determined adverse to

petitioner's position is *res judicata. Ingram v. State* (1987), Ind., 508 N.E.2d 805, 807. In Schiro's direct appeal this court spoke directly of guidelines for considering the jury's recommendation and for appellate review of sentences. Our discussion included the standard of review of death sentences where the court's judgment is contrary to the jury's recommendation, the degree of conclusiveness regarding a jury recommendation of leniency, double jeopardy, where both the jury and the judge consider the imposition of the death penalty where their views are in conflict, and the finding that the judge independently considers the same facts on the same standards as the jury. *Schiro*, 451 N.E.2d at 1054–1058. Questions of legality of the search warrant, affidavit, and seizure of physical items were fully discussed and disposed of on direct appeal. Schiro's contention concerning the failure of the trial court to admit as evidence a certain handwritten document was fully presented and disposed of in the opinion on direct appeal. This court noted the document was given to a witness by a third party who said Schiro wrote it. The witness did not authenticate the document through knowledge of handwriting or presence at its penning, or any other accepted basis to authenticate a piece of handwriting. The only basis he had to believe the document was the out-of-court declaration of the person who gave it to him. We upheld the trial court's finding an insufficient foundation existed to permit admission of the document.

Finally, the direct appeal opinion considered and disposed of, adverse to Schiro, his contention he was harmed by lack of some necessary verdict forms. The entire record of the trial and the original PCR petition were put into evidence in the instant cause. The trial court had the ability to read the opinion and compare issues, and the power to dismiss these issues disposed of in this court's prior proceedings. The trial court properly found all four issues were so disposed and there was no error in dismissing them as *res judicata.*

## II

Schiro claims in the instant cause there were several instances of inadequate assistance of counsel at the trial level and that subsequent counsel were deficient in not raising these issues on direct appeal or original post-conviction action. The state responds Schiro was not entitled to raise these issues in a subsequent post-conviction petition and moreover, when examined, these allegations fail to show prejudice or performance below the norms of professional representation. Schiro claims there were serious matters he brought to his attorney's attention before and during trial and that trial counsel brushed them off and failed to raise them. The record shows that after all these alleged events, when asked at the end of trial if he was satisfied with his representation, Schiro responded in the positive. He then accepted the same lawyer to prosecute his appeal. He now says counsel failed to present certain issues he wanted raised on appeal. However, when the time came to present his original post-conviction petition, Schiro failed to allege even one of these trial or appellate level matters.

The court of appeals recently stated in *Alston v. State* (1988), Ind.App., 521 N.E.2d 1331, 1335, that they would not "take a step backward and create a new vehicle by which a defendant could use a PCR to attack a previous PCR on the grounds of incompetency of counsel in that PCR hearing, and then use yet a third PCR to attack the competency of counsel of the second PCR and so on in perpetuity." In *Lane v. State* (1988), Ind., 521 N.E.2d 947, this Court noted that ineffective assistance of trial counsel would have been an issue available in the post-conviction petition. "Lane's allegation of ineffective assistance is clearly an attempt to circumvent Rule PC 1, section 8, in order to present evidence on issues that had been waived." We stated further, "Lane cannot evade PC Rule 1, section 8, just by typing the words 'ineffective assistance of counsel.'" *Id.* 521 N.E.2d at 949.

If a petitioner is to prevail on a claim of ineffectiveness of counsel he must

show he was denied a fair trial when the conviction or sentence resulted from a breakdown in the adversarial process which rendered the result unreliable. *Strickland*, 466 U.S. at 696, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; *Lawrence*, 464 N.E.2d at 1294. To meet this burden, a petitioner must overcome by strong and convincing evidence a presumption that counsel has prepared and executed his client's defense effectively. *Williams v. State* (1987), Ind., 508 N.E.2d 1264, 1266–67. The question is factually oriented. This court does not speculate about what may have been the most advantageous strategy. Isolated bad tactics or inexperience do not necessarily amount to ineffective assistance of counsel. *McChristion v. State* (1987), Ind., 511 N.E.2d 297, 300.

### (A)

■ In the second PC hearing, Schiro claims he told his counsel facts which should have been used in his defense but were not. He claimed there was evidence the victim consented to the sexual encounters and this could have been proven by checking with bartenders and clerks at bars. He further claimed Mary Lee, his girlfriend, told him she was coerced into her testimony which included his admission to, and description of, the crimes committed upon her. However, Schiro never gave the names of the establishments he and the victim allegedly visited, or identified anyone in any of those establishments who could verify his story. Further, Mary Lee appeared as a witness attempting to help him. She recounted nothing of what Schiro told her which he had not himself told other psychiatric expert witnesses in a thirty-page confession that was referred to as an "autobiography."

Schiro claimed insanity as his defense at trial. The claims he presently makes regarding the probative value of the evidence he allegedly gave his lawyer, are totally inconsistent with the insanity defense and all other evidence in the case. Psychiatric testimony at trial showed that Schiro was a manipulative and incredible individual; the trial court was therefore justified in treating his assertions as questionable and un-

substantiated. There was ample evidence justifying the trial court's deciding the credibility issue, and we find no reason to disturb it. Furthermore, even if we assume *arguendo* that Schiro did bring these matters to his counsel's attention, it was a rational strategy decision to not develop two unpromising and essentially useless leads which could be more damaging than helpful to Schiro.

### (B)

■ Schiro also claims ineffective assistance in counsel's failure to sequester the jury. Counsel was under no duty to request sequestration in a capital case and petitioner must show prejudice by failure to move for it. *Burris v. State* (1984), Ind., 465 N.E.2d 171, 193, *cert. denied*, 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809. To support his contention, Schiro presented a few newspaper clippings showing regional newspapers reported the trial. Included were articles about the jury's final recommendation and the judge's final sentence, though these reports obviously did not affect the jury during its deliberations. He located seven jurors but did not present any evidence that any juror ignored the judge's instructions or became exposed to any outside influence from individuals or media sources. Because he failed in his burden of proof to show prejudice, we must find the trial court correctly rejected this contention of ineffective representation of counsel.

### (C)

[10] Schiro claims counsel did not present an adequate mitigation defense after the penalty phase conviction. The PCR court found Schiro failed to prove counsel's decision was unreasonable or prejudicial. The court's findings of fact noted significant mitigating evidence was presented in the guilt phase of the trial and was argued by counsel in the penalty phase. Schiro raised the insanity defense, thereby bringing into issue at the guilt phase all those matters of character, background, and history that normally are reserved for the

penalty phase. It is a defensible strategic decision to use all this evidence at the guilt phase to try to obtain an acquittal and not reintroduce all the same evidence at the penalty phase. The trial court was justified in finding counsel's performance in this area did not depart from reasonable norms of representation, and therefore no prejudice was shown.

### (D)

Schiro also identifies seven issues he claims were preserved for appeal but not presented by appellate counsel. This issue of ineffective appellate representation was available for presentation in the original post-conviction petition and therefore is waived in this petition. *Lane,* 521 N.E.2d at 949. Furthermore, appellate counsel need not raise on appeal an issue that in his professional judgment appears frivolous or unavailing. *Ingram v. State* (1987), Ind., 508 N.E.2d 805, 808–809. Schiro cites no evidence from the record showing unreasonable professional judgment on these seven issues. He does not give the basis on which he concludes the matters include any reversible error; he does not state the basis for the motion to dismiss or to set aside the verdict, or any of the instructions at issue, or the basis for objection to the evidentiary rulings.

One of the issues involved a state's rebuttal witness, Linda Summerfield, who detailed an armed sexual assault which Schiro perpetrated against her. Schiro claims counsel should have more effectively cross-examined her and objected to' an array of photos from which she picked him as her assailant. First, there is no showing as to what information might have been gained by further cross-examination of this witness, and second, Summerfield's testimony did no more than repeat one instance of as many as twenty-three instances of other unrelated sexual assaults Schiro committed which he himself related in a thirty-page statement.

### (E)

Schiro also cites counsel's failure to respond to his family's assertion the psychiatric witness, Dr. Osanka, tried to "shake him down" for an extra fee as a condition for the most favorable testimony. The trial judge found this story to be incredible. It rested on multiple hearsay as out-of-court declarations attributed by Schiro to his parents. The fact of this alleged "shakedown" was not shown in evidence and Schiro's parents never testified or told anyone else that this incident occurred.

### (F)

Finally, Schiro claims counsel was deficient in not preventing jurors from seeing him transported in shackles. It has been held that reasonable jurors can expect a criminal defendant to be in restraints during breaks and while being transported. *Jenkins v. State* (1986), Ind., 492 N.E.2d 666, 669. We have distinguished between a prisoner appearing in court in bonds or shackles as in *Walker v. State* (1980), 274 Ind. 224, 229, 410 N.E.2d 1190, 1193–1194, and when being transported and seen incidental to that. *Sweet v. State* (1986), Ind., 498 N.E.2d 924, 929, requires a showing of actual harm where jurors see a defendant being transported in restraints. The trial court was justified in finding Schiro demonstrated no inadequacy in representation in any of these areas.

### III

Schiro claims the aggravating circumstance of intentional killing could not be considered at the penalty phase because the felony murder as charged lacked the requisite element of *mens rea* in committing the underlying rape. He attempts to apply a fundamental double jeopardy rule that a conviction of a lesser included offense is an acquittal of the greater offense. An aggravating circumstance, however, is not an offense. A person convicted of either type of murder, that is, intentional killing under IC 35–42–1–1(1), or felony murder IC 35–42–1–1(2), can be shown to contain the aggravator of intentional killing justifying the imposition of the death penalty. One can be found guilty of felony murder where the intention was to commit the underlying felony without necessarily

intending to commit the murder. It does not follow, however, that one convicted of felony murder cannot be shown to have intentionally killed the victim while perpetrating the felony. IC 35–50–2–9 provides in pertinent part:

> (a) The State may seek a death sentence for murder by alleging, on a page separate from the rest of the charging instrument, the existence of at least one (1) of the aggravating circumstances listed in subsection (b). In the sentencing hearing after a person is convicted of murder, the state must prove beyond a reasonable doubt the existence of at least one (1) of the aggravating circumstances alleged.
>
> (b) The aggravating circumstances are as follows:
>
> (1) The defendant committed the murder by *intentionally* killing the victim while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery. (emphasis added).

The crimes of murder and felony murder each contain elements different from the other but are equal in rank. One is not an included offense of the other and where the jury, as in the instant case, finds the defendant guilty of one of the types of murder and remains silent on the other, it does not operate as an acquittal of the elements of the type of murder the jury chose not to consider. Count I here, under IC 35–42–1–1(1), did not charge Schiro with intentionally killing but with knowingly killing. Thus the jury in the guilt phase never confronted the issue of intentional killing and its verdict could not be considered to have included any conclusion on that issue. The court then properly proceeded to the penalty phase pursuant to IC 35–50–2–9, and the jury determined that the aggravating circumstance existed in that Schiro committed the murder by intentionally killing the victim while committing or attempting to commit rape and criminal deviate conduct. In this same statute, § (9)(e) provides that the judge is not bound by the recommendation of the jury, however, he must base his decision upon the same standard the jury was required to consider. The jury made

their finding and the trial judge subsequently made his. There is therefore no error presented on this issue.

### IV

Schiro claims that even if individually none of the above issues raise sufficient prejudice to require relief, cumulatively they do. Since we find no error on any of the issues above, no prejudicial error is presented in their accumulation.

The trial court is affirmed.

SHEPARD, C.J., and GIVAN, J., concur.

DeBRULER, J., dissents with separate opinion in which DICKSON, J., concurs.

DeBRULER, Justice, dissenting.

In this case appellant was charged in three separate counts. Count I charged murder as a knowing killing of the victim. Count II charged murder as a killing in the course of a rape of the same victim. Count III charged murder as a killing in the course of deviate sexual conduct. The jury was charged on all counts, and returned but a single verdict, namely guilty on Count II. As to the other counts, the verdict was entirely silent in regard to guilt or innocence of appellant. The law requires that the jury verdict be deemed the legal equivalent of verdicts that the defendant is not guilty of the felonies charged in Counts I and III. *Buckner v. State* (1969), 252 Ind. 379, 248 N.E.2d 348. *Smith v. State* (1951), 229 Ind. 546, 99 N.E.2d 417. *Cichos v. State* (1965), 246 Ind. 680, 208 N.E.2d 685, which appears to hold to the contrary, is not, but is a waiver case. There, this Court held that the double jeopardy claim against retrial was waived by filing a motion for new trial. Even if *Cichos* is valid law today, it does not apply here because appellant took no action between the silent jury verdict on the murder charge of knowingly killing and the judge's sentencing finding of the aggravating circumstance that appellant had intentionally killed in the course of the rape, which one might deem a waiver.

At the trial, the prosecution used every resource at its disposal to persuade the jury that appellant had a knowing state of mind when he killed his victim. It failed to do so. At the sentencing hearing before the jury it had an opportunity to persuade the jury that appellant had an intentional state of mind when he killed his victim. The jury returned a recommendation of no death. At the sentencing hearing before the judge, the prosecution had yet another opportunity to demonstrate an intentional state of mind, and finally succeeded. In my view, the silent verdict of the jury on Count I, charging a knowing state of mind, must be deemed the constitutional equivalent of a final and immutable rejection of the State's claim that appellant deserves to die because he had an intentional state of mind. That verdict acquitted appellant of that condition which was necessary to impose the death penalty under this charge. *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). The difference in the two states of mind is insignificant and too esoteric in this instance. In the one, a person acts with awareness that he is so acting. In the other, a person acts with an objective to so act. I.C. 35-41-2-2. To accord the difference, one would have to believe that a person can be presently unaware that he is strangling another, while at the same time having a goal presently in mind to strangle such other person.

I would reverse the judgment and remand with instructions to grant post-conviction relief in the form of a new sentence of years upon the conviction for felony murder.

DICKSON, J., concurs.