No. 89–5327.   SCHIRO *v.* INDIANA.   Sup. Ct. Ind.   Certiorari denied.

Opinion of JUSTICE STEVENS respecting the denial of the petition for writ of certiorari.

There is a critical difference between a judgment of affirmance and an order denying a petition for a writ of certiorari. The former determines the rights of the parties; the latter expresses no opinion on the merits of the case.[1] Partly for that reason, and

---

[1] "Inasmuch, therefore, as all that a denial of a petition for a writ of certiorari means is that fewer than four members of the Court thought it should be granted, this Court has rigorously insisted that such a denial carries with it no implication whatever regarding the Court's views on the merits of a case which it has declined to review. The Court has said this again and again; again and again the admonition has to be repeated.

"The one thing that can be said with certainty about the Court's denial of Maryland's petition in this case is that it does not remotely imply approval or

partly because our certiorari docket is so crowded, the Court does not explain its reasons for entering such orders. There is, accordingly, a danger that an individual Justice's statement of his or her views respecting the denial of certiorari may be misleading or counterproductive.[2]    Nevertheless, I am persuaded that a brief comment on this troublesome and unusual case is appropriate.

This is a capital case.   It is one of 63 such cases that were considered at our conference during the week of September 25, 1989. Despite the contrary views that were once expressed,[3] it is neither feasible nor wise for this Court to review the merits of every capital case in which the petitioner asks us to review the decision of a State's highest court.   In many of these cases review of the federal constitutional issues is more effectively administered in federal habeas corpus proceedings.[4]   The burdens associated with the delay in the date of execution are more than offset by the benefit of complete and adequate review of the decision to impose a death sentence.

In this case, despite the fact that petitioner was convicted of felony murder and sentenced to death in 1981, the Federal District Court has not yet had an opportunity to review his federal constitutional claims.[5]   The Indiana Supreme Court has, however, considered the validity of the death sentence on four different occasions.   First, while the case was pending on direct review, the court unanimously granted *the State's* petition to remand the case to the trial judge to enable him to make the findings of fact that the Indiana statute requires to support a death sentence.   Sec-

---

disapproval of what was said by the Court of Appeals of Maryland.   The issues canvassed in the opinions of that court, and which the State of Maryland has asked us to review, are of a nature which very readily lend themselves to misconstruction of the denial of this petition.   The present instance is peculiarly one where the redundant become the necessary." *Maryland* v. *Baltimore Radio Show, Inc.*, 338 U. S. 912, 919 (1950) (opinion of Frankfurter, J., respecting denial of certiorari).

[2] See *Singleton* v. *Commissioner*, 439 U. S. 940, 945–946 (1978) (opinion of STEVENS, J., respecting denial of certiorari).

[3] See *Coleman* v. *Balkcom*, 451 U. S. 949, 956–964 (1981) (REHNQUIST, J., dissenting from denial of certiorari).

[4] *E. g.*, *Watkins* v. *Virginia*, 475 U. S. 1099, 1100 (1986) (opinion of STEVENS, J., respecting denial of certiorari).

[5] In 1986 petitioner did file an application for a writ of habeas corpus but the parties have advised that it was "remanded" to the state court because petitioner's state remedies had not yet been completely exhausted.   See *Rose* v. *Lundy*, 455 U. S. 509 (1982).

ond, in 1983, after the trial judge entered his findings *nunc pro tunc*, a bare majority of the court affirmed the sentence and held that the findings were adequate to support the judge's decision to override the unanimous recommendation of the jury that the death penalty should not be imposed.[6] Third, in 1985, a bare majority of the court affirmed the denial of postconviction relief, rejecting the claim that the trial judge violated the Due Process Clause by relying in imposing the death sentence on personal observations of petitioner's conduct not previously disclosed to counsel.[7] Fourth, again by a bare majority, the Indiana Supreme Court rejected the claim that is asserted in the certiorari petition the Court has denied today.[8]

Petitioner claims that the imposition of a death sentence on the basis of the trial judge's finding that he intended to kill his victim, made after the jury had rejected the charge of intentional murder and had unanimously refused to recommend death, violates the Double Jeopardy Clause. It is undisputed that the trial judge's

---

[6] See *Schiro* v. *State*, 451 N. E. 2d 1047 (1983). Ironically, although the trial judge refused to follow the jury's recommendation of life at the penalty phase, he apparently found its rejection of the insanity defense, at the guilt stage, dispositive on the sole aggravating factor that petitioner committed the murder intentionally. He explained that the sentence was supported by petitioner's conviction of felony murder and the fact that "[t]he jury rejected the plea of insanity by its verdict," further stating that since there was an aggravating circumstance and no mitigating circumstances to outweigh it, "the death sentence is required by the Statutes of the State of Indiana. This Court has no choice but to follow the law." *Id.*, at 1066–1067. One of the dissenting justices wrote:

"Under the evidence, Defendant could have been found guilty of the crime charged whether he killed Laura Luebbehusen *intentionally* or knowingly or merely accidentally while committing or attempting to commit a rape. He was subject to the death penalty, however, only if he killed her *intentionally*. The interposition and rejection of the defense of insanity (mental disease or defect) Ind. Code § 35–41–3–6 (Burns 1979) simply has no relevance to the issue of whether or not the killing was done intentionally; yet, it is obvious that the trial court judge regarded it as significant, if not in fact controlling." *Id.*, at 1068 (Prentice, J., concurring and dissenting).

[7] See *Schiro* v. *State*, 479 N. E. 2d 556 (1985). In dissenting from the denial of certiorari, two Members of this Court expressed the opinion that the judge's rejection of the jury recommendation of no death sentence was inconsistent with the Court's holding in *Spaziano* v. *Florida*, 468 U. S. 447 (1984). See *Schiro* v. *Indiana*, 475 U. S. 1036 (1986) (MARSHALL, J., joined by BRENNAN, J.).

[8] See 533 N. E. 2d 1201 (1989).

finding that petitioner intended to kill his victim is an essential predicate for the death penalty. Under Indiana law, that finding had to be made beyond a reasonable doubt. Ind. Code Ann. § 35–50–2–9 (Supp. 1989). Yet, the jury twice indicated that it did not believe that the murder was intentional. First, the jury apparently rejected the prosecutor's contention, at the guilt stage, that petitioner committed the murder knowingly. Petitioner was charged with murder in the knowing killing of the victim in Count I and with felony murder in Count II; although the jury convicted him of the latter, it implicitly acquitted him of the knowing state of mind necessary to support a conviction on Count I. Second, after the prosecutor had again argued to the jury that the murder was intentional, the jury unanimously refused to recommend the death penalty. Petitioner's claim was rejected as a matter of state law by the Indiana Supreme Court, which held that the jury's refusal to convict on Count I was not an acquittal of the elements of the offense charged in that Count. That holding might well be sufficient reason to deny review of a case arising from a state collateral proceeding. Nonetheless, petitioner's claim has a federal dimension that demands fresh analysis when it is first considered on its merits in a federal court.[9]

It cannot be disputed that petitioner was placed in jeopardy within the meaning of the Fifth Amendment to the Federal Constitution when the trial on Count I commenced. See *Crist* v. *Bretz*, 437 U. S. 28 (1978). The fact that Indiana may not consider the jury's silence an "acquittal" as a matter of state law surely does not determine the constitutional question whether he could again be placed in jeopardy on the same charge. Cf. *Price* v. *Georgia*, 398 U. S. 323 (1970). Nor does it determine whether the action by the jury—especially when illuminated by its unanimous decision at the penalty hearing—should be given preclusive effect either under the principles of double jeopardy in capital cases enunciated in *Bullington* v. *Missouri*, 451 U. S. 430 (1981), or under more general

---

[9] "As our opinions have made clear, no higher duty exists in the judging process than to exercise meticulous care where the sentence may be, or is, death." Address of Justice Powell, Eleventh Circuit Conference, May 8–10, 1983. See also Judicial Conference of the United States, Ad Hoc Committee on Federal Habeas Corpus in Capital Cases, Committee Report and Proposal 5 (Aug. 23, 1989) ("The merits of capital cases should be reviewed carefully and deliberately, and not under time pressure. This should be true both during state and federal collateral review").

principles of collateral estoppel, see *Simpson* v. *Florida*, 403 U. S. 384 (1971); *Ashe* v. *Swenson*, 397 U. S. 436 (1970). These, as well as the other federal questions that petitioner has raised in the state courts, are open to and will presumably receive careful consideration from the federal court with habeas corpus jurisdiction over the case.[10]

The long delay that has occurred in this case is a matter of public concern and a matter that is relevant to any consideration of the efficacy of capital punishment. The State's dubious procedural scheme that allows a judge to override a jury's appraisal of the seriousness of a capital defendant's crime has resulted in eight years of litigation. Those years of litigation, and the costs that they have imposed on lawyers, judges, and court administrators, have not furthered any societal interest in incapacitation: since petitioner has been incarcerated continuously from the date of his trial, he has presented no greater threat to the community than if he had been executed promptly after the trial was completed. Nor, since juries presumably represent a fair cross section of the community, has the cost served any compelling interest in satisfying an outraged community's desire for revenge or retribution. The delay, however, is manifestly not relevant to, and should have no impact on, petitioner's entitlement to consideration of his substantial federal claims by the federal courts.

JUSTICE BRENNAN and JUSTICE MARSHALL, dissenting.

Adhering to our views that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227, 231 (1976), we would grant certiorari and vacate the death sentence in this case.

---

[10] Cf. *Ashe* v. *Swenson*, 397 U. S., at 437, n. 1 (applying *Benton* v. *Maryland*, 395 U. S. 784 (1969), retroactively to cases on federal habeas).