Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



APPELLANT PRO SE:

**JIM A. EDSALL**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JIM EDSALL, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 57A05-1402-PC-00051 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE NOBLE CIRCUIT COURT
The Honorable G. David Laur, Judge
Cause No. 57C01-1307-PC-002

**August 18, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Jim Edsall, pro se, appeals the post-conviction court's denial of his petition for post-conviction relief. He contends that the post-conviction court erred in (1) holding that he did not receive ineffective assistance of trial counsel and post-conviction counsel and (2) summarily denying his other post-conviction claims and his motion to correct error.

We affirm in part, reverse in part, and remand.

**Facts and Procedural History**

On June 9, 2006, the State charged Edsall with seven counts of Class A felony delivery of methamphetamine and two counts of Class A felony conspiracy to manufacture methamphetamine. Attorney Hugh Taylor ("Taylor") filed his appearance on Edsall's behalf on August 21, 2006. Taylor withdrew his appearance approximately one year later, on August 29, 2007. On September 14, 2007, attorney James Stevens ("Stevens") entered his appearance on Edsall's behalf.

The following facts of this case were set forth in our decision in Edsall's direct appeal:

> On January 4, 2008, the parties appeared for a guilty plea hearing and filed a plea agreement ("Plea Agreement"), in which Edsall agreed to plead guilty to five counts of Class A felony delivery of methamphetamine and one count of Class A felony conspiracy to manufacture methamphetamine, and the State agreed to dismiss the remaining charges. With regard to sentencing, the Plea Agreement provided:
>
> "Upon the Defendant's plea of guilty to Counts 1, 3, 4, 5, 7 and 9 he shall receive a concurrent maximum sentence of thirty (30) years in IDOC and the parties will argue all terms at sentencing."

2

The Plea Agreement stated that the sentence imposed would be served consecutive to Edsall's sentence from a prior Michigan conviction. The trial court advised Edsall of his rights, including the range of penalties. Specifically, the trial court told Edsall that the term of imprisonment for a Class A felony ranges from twenty to fifty years with the advisory term being thirty years. The trial court also told Edsall that for each count to which he was pleading guilty there was a potential fine from zero to ten thousand dollars. There was no mention of restitution at the guilty plea hearing. Following examination of Edsall under oath to establish a factual basis, the trial court accepted the Plea Agreement, ordered the preparation of a presentence investigation report ("PSI"), and set the matter for a sentencing hearing.

In January 2008, the probation department filed Edsall's PSI with the trial court. The victim's impact statement portion of the PSI stated, "To date, a restitution request has not been received from I.M.A.G.E. Drug Task Force; they plan to submit a restitution amount to the prosecutor's office." Tr. at 64. Thereafter, at the February 8, 2008 sentencing hearing, the State presented Exhibit A, entitled Edsall Investigation Costs, a copy of which had been provided earlier that morning to Edsall's counsel. The trial court asked Edsall's attorney if there was "any argument or objection" to the total restitution amount, which was $19,581.40, and Edsall's counsel responded, "at this point I certainly won't stipulate to the amount," but did not pose any objection to the exhibit or the matter of restitution being sought. Tr. at 81.

Thereafter, the State presented the testimony of Steuben County Sheriff's Deputy Tim Troyer ("Deputy Troyer"), who testified about the undercover operation in which he and at least four other law enforcement officers infiltrated, over a fifty-seven-day period, Edsall's manufacturing operation. Deputy Troyer testified that Edsall's operation was sophisticated and the largest he has ever seen in his twenty-one years of law enforcement experience. As part of the undercover operation, Deputy Troyer, known to Edsall as "Hawk," agreed to provide pseudoephedrine pills, or "red things," to Edsall, who would then give a portion of the finished product back to Hawk. Tr. at 89, 91, 94. According to testimony, Deputy Troyer provided a total of 16,308 red pills, in 96–count boxes, to Edsall during the investigation. Walgreens Pharmacy donated 5,520 outdated pills, and undercover officers purchased 10,788 pills at pharmacies. Exhibit A included the cost incurred to purchase the pills, and the expenses and wages of those involved. Exhibit A was admitted without objection.

Edsall v. State, 983 N.E.2d 200, 203-04 (Ind. Ct. App. 2013), reh'g denied (internal citations omitted).

The trial court sentenced Edsall to thirty years incarceration for each conviction, to be served concurrently. The trial court also ordered Edsall to pay $19,581.40 in restitution to the local drug task force for expenses incurred as a result of its investigation. Edsall filed a direct appeal of his sentence and the trial court's restitution order. On February 18, 2013, this court affirmed Edsall's sentence but reversed the order of restitution, concluding that the State was not a "victim" or Edsall's crimes within the meaning of the restitution statute. See Edsall v. State, 983 N.E.2d 200 (Ind. Ct. App. 2013), reh'g denied.

Edsall filed his petition for post-conviction relief on July 5, 2013. In his petition, Edsall claimed that: (1) he received ineffective assistance of trial counsel; (2) his guilty plea was not made knowingly, intelligently, and voluntarily; (3) an inadequate factual basis existed for Edsall's guilty plea; (4) law enforcement officer statements that provided the factual basis for the arrest warrant should not be considered credible; (5) a law enforcement officer witness was not credible and that he committed perjury; (6) the State's claim that there were children present in the area during some of the methamphetamine deals was false; (7) the prosecutor committed misconduct by refusing to provide full discovery; (8) Edsall was sentenced differently than his co-defendants; and (9) law enforcement officers and Walgreens Pharmacy committed various unlawful acts during the course of the investigation.

4

On July 8, 2013, Edsall filed a request for the appointment of a special prosecutor, arguing that the elected prosecutor had a conflict of interest and had committed criminal acts. The post-conviction court denied his request.

On November 15, 2013, the State filed two motions for summary disposition of Edsall's claims. The first motion noted that Edsall's sentence had already been affirmed by this court. The second motion asserted that Edsall's other claims, with the sole exception of his ineffective assistance of trial counsel claim, were waived when he failed to raise them on direct appeal.

The post-conviction court held an evidentiary hearing on November 21, 2013. During the hearing, the post-conviction court granted the State's motions for summary disposition. The post-conviction court heard evidence only on Edsall's claim of ineffective assistance of trial counsel. Edsall was represented at the hearing by attorney Diane Miller ("Miller"). After the court pointed out to Edsall the presence of a possible conflict of interest, Edsall consented to Miller's representation of him.[1]

Miller presented testimony from Taylor, Edsall's trial counsel, who stated that he had requested discovery from the State and that he believed that he had obtained full disclosure. He also stated that he provided Edsall's subsequent trial counsel, Stevens, who was deceased at the time of the hearing, with all of the discovery materials. Taylor testified that he had discussed the plea offer with Edsall and that he withdrew after Edsall threatened to sue him for malpractice.

---

[1] Miller had served as a judge pro tempore on August 21, 2006. However, she did not preside over any hearing related to Edsall's case.

On December 18, 2013, the post-conviction court denied Edsall's petition for post-conviction relief, concluding that he did not receive ineffective assistance of trial counsel. Edsall filed a motion to correct error on January 8, 2014, raising the same claims he raised in his petition for post-conviction relief and alleging that he had received ineffective assistance of post-conviction counsel. The post-conviction court denied the motion.

Edsall now appeals.

## Standard of Review

When reviewing appeals from a negative judgment delivered by the post-conviction court, this court will reverse the denial of post-conviction relief only if the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. Davidson v. State, 763 N.E.2d 441, 443 (Ind. 2002). The post-conviction court's findings of fact are accepted unless clearly erroneous, Ind. Trial Rule 52(A), but no deference is accorded conclusions of law. Davidson, 763 N.E.2d at 443-44. Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. Id.

## I. Motion for Special Prosecutor

Edsall first argues that the trial court erred in denying his motion for a special prosecutor. Specifically, he claims that the prosecutor, Steve Clouse ("Clouse"), had a conflict of interest because, prior to being elected prosecutor, Clouse was "fired as the family attorney without his commission in settling Edsall's grandfather's estate" and that

6

Clouse now has a vendetta against Edsall's family. Appellant's Br. at 14. Edsall maintains that he was prejudiced by this conflict, as demonstrated by the fact that "Edsall's case is the only case on Record where prosecutor Clouse has tried to collect Restitution for the wages of the Police," that Clouse engaged in prosecutorial misconduct, that Clouse threatened Edsall, and that "Clouse never provided Edsall with a complete copy of the State's pre-trial discovery." Id. at 20.

To serve the ends of justice and preserve public confidence in the criminal justice system, it sometimes becomes necessary for a trial court to appoint a special prosecutor. Indiana Code section 33-39-10-2(b) provides that:

> A circuit court or superior court judge:
>> (2) may appoint a special prosecutor if:
>>> (A) a person files a verified petition requesting the appointment of a special prosecutor; and
>>> (B) the court, after:
>>>> (i) notice is given to the prosecuting attorney; and
>>>> (ii) an evidentiary hearing is conducted at which the prosecuting attorney is given an opportunity to be heard;
>>> finds by clear and convincing evidence that the appointment is necessary to avoid an actual conflict of interest or there is probable cause to believe that the prosecuting attorney has committed a crime;

When reviewing a claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and, if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not otherwise have been subjected. Booher v. State, 773 N.E.2d 814, 817 (Ind. 2002). The gravity of the peril is measured by the probable persuasive effect of the

7

misconduct on the jury's decision rather than the degree of impropriety of the conduct. Id.

We find no basis to conclude that the circumstances of this case required the appointment of a special prosecutor. The only evidence Edsall presented concerning Clouse's alleged grudge against Edsall and the threats Edsall claims Clouse made, however, was Edsall's own self-serving statements. The post-conviction court determined that Edsall's allegations of Clouse's conflict of interest were not credible and we will not judge for ourselves his credibility. See Woods v. State, 701 N.E.2d 1208 (Ind. 1998) (noting that the post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses).

With regard to Edsall's allegations that Clouse committed prosecutorial misconduct by engaging in criminal acts and by failing to provide complete discovery, we again note that Edsall failed to present any credible evidence that Clouse engaged in criminal activity or misconduct. Edsall's claim that Clouse failed to provide Edsall with full discovery for his criminal case is similarly unsupported by the evidence. Furthermore, attorney Taylor testified at the post-conviction hearing that he received full discovery from the State and that he provided this material to Stevens after his withdrawal. Because Edsall failed to establish by clear and convincing evidence that Clouse committed a crime or that the appointment of a special prosecutor was necessary to avoid actual conflict, we conclude that the post-conviction court did not err in denying Edsall's request.

## II. Ineffective Assistance of Trial Counsel

Edsall argues that the post-conviction court erred in concluding that Edsall did not receive ineffective assistance of trial counsel. However, in his appellant's brief, Edsall fails to present any cogent argument with respect to his claim in this regard. Therefore, Edsall waives this issue on appeal. See Dickes v. Felger, 981 N.E.2d 559, 562 (Ind. Ct. App. 2012); Shane v. State, 716 N.E.2d 391, 398 n. 3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument).

Waiver notwithstanding, we conclude that the post-conviction court did not err in finding that Edsall did not receive ineffective assistance of post-conviction counsel. As far as we can discern, Edsall's claim is that his trial counsel, both Taylor and Stevens, were ineffective for failing to secure full discovery from the State and for coercing Edsall into entering into a plea agreement by threatening him with a 450-year sentence.

In its order denying Edsall's petition for relief, the post-conviction court stated:

> [T]he undisputed evidence is that Mr. Taylor and Mr. Stevens each received a complete packet of discovery. Mr. Taylor received his discovery packet directly from the State of Indiana, and then forwarded a copy to Mr. Stevens upon withdrawing from the case. Further it did not fall below an objective standard of reasonableness when Mr. Taylor and Mr. Stevens each advised Petitioner that he faced up to four hundred fifty (450) years in prison without the benefit of a plea agreement, for the reason that Petition was charged with nine class A felonies, each of which had a maximum sentence of fifty (50 years) in prison. Petitioner's exposure under the terms of the plea agreement was only thirty (30) years. Whether or not Mr. Stevens failed to provide an itemized bill to Petitioner did not affect the outcome of the case, nor did the failure of Mr. Stevens to timely file an appeal following the sentence. This Court also recognizes that, though it was impossible to procure Mr. Stevens's attendance at the hearing, there is no reason to believe that Mr. Stevens would have corroborated the allegations made by Petitioner.

Moreover, even if this Court were to find that Mr. Taylor or Mr. Stevens provided ineffective assistance to Petitioner, there is no evidence to show that the underlying criminal prosecution would have ended different[ly].

Appellant's App. pp. 319-320.

The law regarding claims of ineffective assistance of trial counsel was summarized in Timberlake v. State as follows:

A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The Strickland Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the Strickland test are separate and independent inquiries. Thus, [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed.

753 N.E.2d 591, 603 (Ind.2001) (citations and quotations omitted).

There is no evidence supporting Edsall's claim that his trial counsel failed to secure full discovery from the State, other than his own self-serving statement.

10

Furthermore, as the post-conviction court noted, it did not fall below an objective standard of reasonableness for Edsall's trial counsel to accurately advise him that he could receive up to 450 years in prison for the nine Class A felonies with which he was charged if he failed to enter into a plea agreement. For all of these reasons, and waiver notwithstanding, Edsall has not proven that his trial counsel's performance was deficient or that he was prejudiced.

### III. Ineffective Assistance of Post-Conviction Counsel

In his motion to correct error, Edsall raised various claims related to the alleged ineffectiveness of his post-conviction counsel, Diane Miller. He now argues that the post-conviction court erred in determining that Miller's representation of Edsall was not ineffective. To support his contention that he received ineffective assistance of post-conviction counsel, he argues that Miller "made no attorney/client visits to discuss the case with Edsall prior to the November 21, 2013 evidentiary hearing" and that, due to a stroke she had previously suffered, her speech was impaired and she failed to make appropriate objections or present adequate evidence in Edsall's favor. Appellant's Br. at 31. He also points out that Miller had previously represented three of Edsall's co-defendants.

The right to counsel in post-conviction proceedings is not guaranteed by the Sixth Amendment of the United States Constitution or Article 1, Section 13 of the Indiana Constitution. Baum v. State, 533 N.E.2d 1200, 1201 (Ind. 1989). A post-conviction proceeding is not generally regarded as a criminal proceeding. Id. Thus, it is not required that the constitutional standards applied to ineffective assistance of counsel

11

challenges be applied when judging the actions of post-conviction counsel at the appellate level. Id. Rather, we apply the standard that "if counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court, it is not necessary to judge his performance by the rigorous standard set forth" for purely criminal proceedings. Id.; see also Hill v. State, 960 N.E.2d 141, 147 (Ind. 2012) (reaffirming the Baum standard as the appropriate standard for evaluating post-conviction counsel's performance).

Contrary to Edsall's argument, Miller's representation of Edsall was not ineffective. Miller presented Taylor as a witness and questioned him regarding Edsall's claim that the State failed to provide Edsall with its full discovery. She also questioned him about Edsall's plea agreement. She called Edsall as a witness and examined him about his discovery-related allegations against the State and the voluntariness of his guilty plea. She also called Edsall's father as a witness and examined him on Stevens's representation of Edsall.[2] Finally, Miller filed what amounted to proposed findings and conclusions with the post-conviction court. Under these facts and circumstances, we conclude that Miller represented Edsall in a procedurally fair setting. Cf. Taylor v. State, 882 N.E.2d 777, 784 (Ind. Ct. App. 2008) (determining that petitioner was effectively abandoned by post-conviction counsel because counsel appeared at the post-conviction hearing but presented no evidence in support of petitioner's claims). Therefore, the post-

---

[2] In his motion to correct errors, Edsall claims that he was denied the right to confront witnesses against him because Miller failed to question some of the witnesses he suggested and because the testimony she elicited from the witnesses she called was damaging to Edsall. This is not a violation of Edsall's Sixth Amendment rights, as he contends. See Moore v. State, 839 N.E.2d 178 (Ind. Ct. App. 2005) (holding that the Confrontation Clause only guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish).

12

conviction court did not err in concluding that Edsall did not receive ineffective assistance of post-conviction counsel.

### III. Summary Denial of Post-Conviction Claims and Motion to Correct Error

Edsall argues that the post-conviction court erred when it summarily denied the claims set forth in his petition for post-conviction relief related to the validity of his guilty plea, his sentencing, his allegations of prosecutorial misconduct, his challenge to the State's claim that children were in the area of the drug sales, and the credibility of evidence presented by the State during his sentencing hearing.

Specifically, Edsall contends that he was improperly denied the right to challenge his jail time credit; that he was improperly ordered to serve a lengthier sentence than those imposed on his eleven co-defendants; that there was an insufficient factual basis to support his plea agreement; and that the State's witnesses were dishonest and its evidence was falsified and fabricated.[3] He further argues that the post-conviction court erred when it denied his motion to correct error, in which he raised many of the same claims raised in his petition for post-conviction relief in addition to his allegation that his post-conviction counsel was ineffective. See supra.

We review the grant of a motion for summary disposition in post-conviction proceedings on appeal in the same way that we review a motion for summary judgment. Norris v. State, 896 N.E.2d 1149, 1151 (Ind. 2008). A grant of summary disposition is

---

[3] Edsall also claims that the post-conviction court erred in admitting a tape recording containing evidence relevant to a charge that had been dismissed pursuant to his plea agreement. We disagree. Edsall claimed in his petition for post-conviction relief that his trial counsel was ineffective for failing to obtain full discovery from the state and, specifically, that part of the recordings were altered and missing. Therefore, the recordings were relevant to the post-conviction court's determination.

proper if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Ind. Post-Conviction Rule l(4)(g). Summary disposition is a matter for appellate de novo determination when the determinative issue is a matter of law, not fact. Norris, 896 N.E.2d at 1151.

The purpose of the post-conviction relief process is to allow a petitioner to raise issues not known at the time of the original trial and appeal or for some reason not available to the petitioner at that time. Schiro v. State, 533 N.E.2d 1201, 1204 (Ind. 1989). "[I]ssues which are not raised either at the trial level, on appeal, or in a post-conviction petition are waived." Howard v. State, 467 N.E.2d 1, 2 (Ind. 1984). Edsall's sentencing claims, his allegations of prosecutorial misconduct, and his arguments with respect to the State's evidence were available for direct appeal but were not raised and are therefore waived. See Kirk v. State, 632 N.E.2d 776, 779 (Ind. Ct. App. 1994).

Furthermore, Edsall is precluded from challenging the evidence supporting his guilt. Our supreme court has been unambiguous regarding the consequences of pleading guilty in Indiana: "a defendant's plea of guilty is not merely a procedural event that forecloses the necessity of trial and triggers the imposition of sentence. It also, and more importantly, conclusively establishes the fact of guilt, a prerequisite in Indiana for the imposition of criminal punishment." Alvey v. State, 911 N.E.2d 1248, 1249 (Ind. 2009) (internal alterations and quotations omitted). "[I]t is inconsistent to allow defendants both to plead guilty and to challenge evidence supporting the underlying convictions." Id. "When a judgment of conviction upon a guilty plea becomes final and the defendant

14

seeks to reopen the proceedings, the inquiry is normally confined to whether the underlying plea was both counseled and voluntary." Id.

This rationale also applies in the post-conviction setting:

A plea of guilty . . . forecloses a post-conviction challenge to the facts adjudicated by the trial court's acceptance of the guilty plea and the resulting conviction. The facts established by a plea of guilty may not be later challenged in post-conviction proceedings.

Though this defendant now claims that new evidence would require that his conviction be vacated, we cannot harmonize this new position taken by the defendant with the fact that he originally admitted to committing the crime by his guilty plea. It is inconsistent to allow defendants who pleaded guilty to use post-conviction proceedings to later revisit the integrity of their plea in light of alleged new evidence seeking to show that they were in fact not guilty. Both his confession and his new claims cannot be true. A defendant knows at the time of his plea whether he is guilty or not to the charged crime. With a trial court's acceptance of a defendant's guilty plea, the defendant waives the right to present evidence regarding guilt or innocence.

Norris v. State, 896 N.E.2d 1149, 1153 (Ind. 2008) (footnote omitted).

Here, when Edsall pleaded guilty, he waived the right to present evidence regarding his guilt or innocence, as he sought to do before the post-conviction court. See Poore v. State, 681 N.E.2d 204, 208 (Ind. 1997) (a criminal defendant who pleads guilty waives, among other things, "the opportunity to put the prosecution to its proof, the chance to offer [her] own exculpatory evidence, and [her] right to have this evidence weighed by a neutral finder of fact[ ]"). Simply said, our post-conviction rules do not permit a defendant who has pleaded guilty to collaterally challenge the evidence underlying his conviction. Therefore, Edsall's claims challenging the State's evidence are waived for post-conviction review and summary disposition of the claims by the post-conviction court was proper.

15

## IV. Dismissal of Edsall's Guilty Plea Claim

However, as the State concedes, the post-conviction court's summary dismissal of Edsall's challenge to the voluntariness of his guilty plea was not proper. The long-standing test for the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In furtherance of this objective, the Indiana Code provides that the court accepting the guilty plea determine that the defendant: (1) understands the nature of the charges; (2) has been informed that a guilty plea effectively waives several constitutional rights, including trial by jury, confrontation and cross-examining of witnesses, compulsory process, and proof of guilt beyond a reasonable doubt without self-incrimination; and (3) has been informed of the maximum and minimum sentences for the crime charged. Ind. Code § 35-35-1-2.

A criminal defendant is prohibited from challenging the validity of his guilty plea by direct appeal. Instead, any allegations of error must be brought by petition for post-conviction relief. M.Y. v. State, 681 N.E.2d 1178 (Ind. Ct. App. 1997). Because a challenge to the voluntariness of Edsall's guilty plea was not available to him on direct appeal, the trial court erred in determining that he waived this issue for purposes of post-conviction relief by not raising it on direct appeal. Consequently, we remand to the post-conviction court for the determination of whether Edsall's guilty plea was voluntary and knowing. See Diaz v. State, 934 N.E.2d 1089 (Ind. 2010) (concluding that where evidence before post-conviction court did not reveal whether defendant was provided with accurate language interpreting a plea agreement, remand of order denying post-

16

conviction relief was required in order for post-conviction court to perform its own translation of the plea agreement and the sentencing hearing, and to rehear other pertinent evidence, to determine whether defendant's guilty plea was voluntary and intelligent); Hunter v. State, 477 N.E.2d 317 (Ind. Ct. App. 1985) (holding that defendant's post-conviction allegations that he pleaded guilty in response to promise of drug and alcohol treatment while in prison presented factual issue as to whether defendant's guilty plea was improperly induced and thereby involuntary, precluding summary disposition).

## Conclusion

The post-conviction court's summary denial of Edsall's petition for post-conviction relief and motion to correct error was proper on the issues of the appointment of special prosecutor, the allegations of prosecutorial misconduct, the ineffectiveness of trial counsel, the ineffectiveness of post-conviction counsel, Edsall's sentence, and the credibility of the State's evidence. However, summary denial was improper on the issue of the validity of Edsall's guilty plea. The post-conviction court's failure to address this issue requires remand for determination of whether Edsall entered into his guilty plea knowingly and voluntarily.

Affirmed in part, reversed in part, and remanded.

RILEY, J., and CRONE, J., concur.

17