Robert E. SHOULDERS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9012–PC–726.

Court of Appeals of Indiana, Fifth District.

Sept. 23, 1991.

See also 480 N.E.2d 211.

Susan K. Carpenter, Public Defender, Linda G. Nicholson, Deputy Public Defender, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

SHARPNACK, Judge.

Robert E. Shoulders appeals the denial of his petition for post-conviction relief. We affirm.

Shoulders raises three issues on appeal:
1. Did the post-conviction court err in holding that the supreme court's decision in Shoulders's direct appeal is *res judicata* and bars reconsideration of the trial court's alleged error in prohibiting Shoulders from asking a state's witness, who, pursuant to a plea bargain, had agreed to testify against Shoulders, whether he knew the maximum possible penalty for a class A felony?
2. Was Shoulders deprived of effective assistance of trial or appellate counsel?
3. Did the prosecutor engage in misconduct which prejudiced Shoulders's right to due process of law?

Shoulders was convicted of robbery and theft. The facts of the crime are reported in the supreme court opinion affirming his conviction on direct appeal. *Shoulders v. State* (1985), Ind., 480 N.E.2d 211, 211–212.

While testifying at his trial, Shoulders admitted that he committed the theft, but denied that he committed the robbery. His conviction of robbery was based in part on the testimony of his accomplice, Floyd Mullins, who had earlier entered into a plea agreement with the state. The plea agreement provided that Mullins would testify against Shoulders and plead guilty to class B felony burglary and that the state, in return, would forgo prosecuting Mullins for class A felony robbery and class D felony theft. Mullins received a sentence of six years imprisonment on the burglary conviction.

At trial, Mullins divulged the terms of the plea agreement on direct examination. Under cross-examination, he stated that he had been informed of the maximum possible sentence for a class B felony. Shoulders's counsel asked him if he was aware of the maximum possible sentence for a class A felony. The state objected, and the trial court sustained the objection.

Shoulders took a direct appeal to the supreme court challenging the trial court's refusal to allow his counsel to ask the question on cross-examination. The unanimous supreme court, writing through Justice DeBruler, rejected Shoulders's argument, stating:

> Here, the State disclosed the entire plea agreement which indicated that a robbery charge and a theft charge were dismissed in exchange for a plea of guilty to burglary and for his testimony against appellant.

> This disclosure was sufficient to inform the jury that Mullins received a substantially diminished penalty for his guilty plea and testimony. As a result, the jury had sufficient facts about the circumstances of Mullins's testimony to evaluate his credibility. In these circumstances, knowledge of the even greater sentence for the class A offense, if imparted to the jury, would not have added tellingly to the impeaching value of the bargain, and would have raised the danger of a compromise verdict.

*Shoulders*, 480 N.E.2d at 212–213.

A little more than one year after it affirmed Shoulders's conviction, the supreme court decided *Jarrett v. State* (1986), Ind., 498 N.E.2d 967. In *Jarrett*, a divided supreme court held that it was reversible error for a trial court to prevent a defendant from inquiring as to the extent of a witness's knowledge of the potential punishment which the witness avoided by entering into a plea agreement and testifying against the defendant.

After the *Jarrett* decision was handed down, Shoulders filed his petition for post-conviction relief claiming, based on the three-part retroactivity test announced in *Fossey v. State* (1970), 254 Ind. 173, 258 N.E.2d 616 and reaffirmed in *Rowley v. State* (1985), Ind., 483 N.E.2d 1078, that he was entitled to retroactive application of the rule announced in *Jarrett*. The post-conviction court rejected his claim. The court evidently recognized the relationship between federal and our own case law on retroactivity and noted that the United States Supreme Court had revised the federal rule in *Teague v. Lane* (1989), 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334. The

court apparently concluded, correctly as it developed, that our supreme court would modify Indiana's retroactivity rules to conform with those announced in *Teague*. The court determined that the *Jarrett* holding concerning the extent to which a defendant could cross-examine concerning plea agreements was not entitled to retroactive application and denied Shoulders's petition. Three weeks later, the supreme court adopted the *Teague* retroactivity test in *Daniels v. State* (1990), Ind., 561 N.E.2d 487.

Shoulders argues that the supreme court's decision in his direct appeal is not *res judicata* despite the fact that the supreme court considered the *identical claim of error* upon which he predicates this post-conviction action. He acknowledges that the doctrine of *res judicata* normally precludes post-conviction reconsideration of issues decided on direct appeal. IND. RULES OF PROCEDURE, POST–CONVICTION RULE 1(8); *Schiro v. State* (1989), Ind., 533 N.E.2d 1201, *cert. denied*, 493 U.S. 910, 110 S.Ct. 268, 107 L.Ed.2d 218. However, he argues that no case holds that *res judicata* bars relitigation of an issue which once had been decided against a defendant on appeal but which had been decided differently in a subsequent case involving a different defendant.

■ We cannot agree with Shoulders's argument, because our supreme court has applied *res judicata* under such circumstances. In *Layton v. State* (1974), 261 Ind. 567, 307 N.E.2d 477 (*Layton III*), the supreme court affirmed the denial of Layton's post-conviction petition. Layton had been convicted of first degree murder and sentenced to life imprisonment. He appealed to the supreme court, which reversed his conviction and remanded for a new trial. *See, Layton v. State* (1966), 248 Ind. 52, 221 N.E.2d 881 (*Layton I*). Before his new trial, Layton filed a motion requesting that the trial court prohibit the state from seeking the death penalty or referring to it in any way, from asking the members of the venire panel any questions concerning their attitudes toward the death penalty, and from introducing any evidence of prior

offenses. The trial court denied the motion except with regard to the prior offenses. At trial, Layton objected to all jury instructions concerning the death penalty, but the trial court overruled his objection and instructed the jury on the death penalty. The jury convicted Layton and he again appealed to the supreme court.

In this second direct appeal, Layton argued that the trial court violated the constitutional prohibition against double jeopardy by allowing the state to seek the death penalty in his second trial since the death penalty amounted to a greater sentence than he received in the first trial. The supreme court rejected his argument, and affirmed his conviction. *See, Layton v. State* (1968), 251 Ind. 205, 240 N.E.2d 489 (*Layton II*).

After our supreme court decided *Layton II*, the United States Supreme Court handed down its decision in *Price v. Georgia* (1970), 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300, which held that the state violated the double jeopardy prohibitions of the federal constitution when, upon retrial following a successful appeal by a criminal defendant, it sought a greater sentence than that received by the defendant in his first trial. Our supreme court followed *Price* in *Causey v. State* (1971), 256 Ind. 19, 266 N.E.2d 795.

Layton then filed a petition for post-conviction relief in which he argued that he was entitled to a new trial under the rule announced in *Price* and *Causey*. In affirming the post-conviction court's denial of Layton's petition, our supreme court wrote:

Secondly, the same issue, although differently assigned, *was reviewed and determined upon the defendant's direct appeal and is therefore res judicata.* At his second trial, the defendant objected to the giving of instructions that recited the criminal statutes applicable to the case and the penalties therefore, including the death penalty, if a jury saw fit to impose it. It was his contention that this constituted double jeopardy. *This issue was decided against the defendant and is final, notwithstanding that* [*Price*

and *Causey* ], *cases upon which he here leans heavily for support, had not yet been decided.*

*Layton III,* 261 Ind. at 570, 307 N.E.2d at 479 (emphasis added).

■ We hold that *Layton III* governs this case. Shoulders, just like the defendant in *Layton III,* seeks to relitigate an issue that has been decided against him by the highest court of this state. Shoulders, just like the defendant in *Layton III,* asserts that he should be allowed to benefit from later cases which arguably overruled the decision in his earlier direct appeal. The supreme court rejected the defendant's petition in *Layton III* because it found its opinion on his direct appeal to be *res judicata,* and we reject Shoulders's petition here.[1]

■ Shoulders next asserts that his trial counsel was ineffective because trial counsel introduced evidence of Shoulders's past offenses which were not admissible for impeachment for dishonesty under *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210; because trial counsel failed to object to questions concerning the offenses which were allegedly beyond the scope of direct examination; because trial counsel failed to tender a jury instruction concerning evidence of other offenses; because trial counsel failed to object to allegedly prejudicial statements made during the state's

opening argument[2]; and because trial counsel allegedly failed to make adequate final argument. In addition, Shoulders asserts that his appellate counsel was ineffective because he did not raise any of these alleged errors.

■ Under our post-conviction rules, the petitioner bears the burden of proving by a preponderance of the evidence that valid grounds exist for setting aside a judgment of conviction. IND.RULES OF PROCEDURE, POST–CONVICTION RULE 1 § 5; *Boone v. State* (1985), Ind., 472 N.E.2d 607, 608; *Williams v. State* (1984), Ind., 464 N.E.2d 893, 894. The post-conviction court is given the sole responsibility for judging the credibility of the witnesses and the weight of the evidence. *Williams,* 464 N.E.2d at 894. We do not reweigh the evidence or judge the credibility of the witnesses on appeal of the denial of a post-conviction petition. *Boone,* 472 N.E.2d at 608. An appeal from the denial of a post-conviction petition is an appeal from a negative judgment. We may reverse a negative judgment only if the evidence is without conflict and logically can lead to but one conclusion, but the post-conviction court reached the opposite conclusion. *Vickers v. State* (1984), Ind., 466 N.E.2d 3, 5.

In order to show that he was deprived of effective assistance of counsel, Shoulders must prove both that his trial counsel's

---

**1.** While we hold that *res judicata* bars Shoulders's claim to relief in this proceeding, we can conceive of situations in which the desired goal of finality in legal proceedings would give way to larger concerns of fundamental fairness. Thus, when this court considers cases of this sort in which the state asserts the doctrine of *res judicata* in order to bar relitigation of a legal question which had previously been decided against the defendant upon direct review, we should undertake the kind of review by means of which courts regularly review attempts to assert the law of the case doctrine as a bar to relitigation of issues. Normally the law of the case doctrine provides that, once a question has been decided by an appellate tribunal, the resolution of that issue binds the parties in that litigation even if the appellate tribunal wrongly decided the issue. *See, e.g., State ex rel. Mavity v. Tyndall* (1947), 225 Ind. 360, 74 N.E.2d 914, *appeal dismissed,* (1948), 333 U.S. 834, 68 S.Ct. 609, 92 L.Ed. 1118; *Chicago & E.R. Co. v. Dinius*

(1913), 180 Ind. 596, 103 N.E. 652; *Barrett v. State* (1911), 175 Ind. 112, 93 N.E. 543, *affirmed,* 229 U.S. 26, 33 S.Ct. 692, 57 L.Ed. 1050. However, our courts will not apply the doctrine in those extraordinary circumstances where to do so would work a manifest injustice. *State v. Lewis* (1989), Ind., 543 N.E.2d 1116, 1118–1119. In this case, the trial court allowed Shoulders to probe Mullins's possible bias, albeit not to the extent Shoulders wished. Had the trial court refused to allow any cross-examination for bias, we would believe that a manifest injustice had occurred, but we do not find that prohibiting Shoulders from asking a single question as to whether Mullins had been informed of the maximum class A felony penalty amounts to such an injustice.

**2.** Shoulders's argument here is, in essence, the same one he advances under his third issue. We will address it in our discussion of that issue.

performance was deficient *and* that the deficiency was so prejudicial that it deprived him of a reliable trial. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693; *Miller v. State* (1989), Ind., 541 N.E.2d 260, 262. In short, Shoulders must prove that it is likely that he would not have been convicted absent his counsel's alleged errors. *Miller*, 541 N.E.2d at 262.

We cannot find that the admission of evidence of Shoulders's prior offenses, his counsel's failure to object to the state's questions regarding one of those offenses, or his counsel's failure to tender a jury instruction on the prior offenses substantially prejudiced Shoulders in any way. We have reviewed the trial record, and have found overwhelming evidence of Shoulders's guilt. One of the victims testified that a man with the same color hair and the same build as Shoulders assaulted him while in the process of taking a riding lawn mower. Another witness, a friend of Shoulders and Mullins, testified that they told her of the robbery and indicated that Shoulders used force to subdue the victim who was trying to prevent the theft. Mullins testified that Shoulders participated in the robbery. Shoulders's palm print was found on the riding mower. Finally, although Shoulders did deny using any other force against the victim, he did admit both that he participated in the theft of the mower and that he attempted to wrest a rifle from the victim who was trying to prevent the theft. Given the overwhelming weight of this evidence, we cannot say that these alleged inefficiencies of counsel deprived Shoulders of a reliable trial. *Gill v. State* (1984), Ind., 467 N.E.2d 724, 726.

■ Shoulders argues that trial counsel's closing argument was inadequate because counsel allegedly advanced inconsistent theories to the jury. This is not the case. Trial counsel argued that Mullins was a more culpable actor in the theft than was Shoulders, and that Shoulders fled the scene when it became apparent that force would be used. Counsel's strategy was apparent—he hoped that the jury would believe that Shoulders was guilty of theft but not robbery. The strategy may not have worked, but we cannot say that counsel was ineffective for attempting it. Of course, because we have found no merit to any of Shoulders's claims of ineffective assistance of trial counsel, we hold that appellate counsel was not ineffective for failing to raise these issues on direct appeal.

■ Finally, Shoulders argues that the prosecutor at his trial engaged in prejudicial misconduct which violated his right to due process of law. Shoulders claims that the prosecutor engaged in misconduct by cross-examining him concerning one of his prior offenses after his counsel opened the door by asking about the prior offense on direct examination. While it may have been error for the trial court to have allowed this line of questioning, we conclude the error was harmless due to the considerable evidence of Shoulders's guilt. *See, e.g., Eckstein v. State* (1988), Ind., 526 N.E.2d 693, 695. Shoulders also claims that the prosecutor improperly vouched for Mullins's credibility on opening argument. The prosecutor did not vouch for Mullins's credibility, however. She did inform the jury as to what his testimony would be, and also informed them as to what evidence would corroborate his story. In addition, she asked the jury not to discredit Mullins's testimony merely because he participated in the crime. At no point did she state a personal belief in Mullins's truthfulness, and, accordingly, her comments did not constitute misconduct.

The supreme court's decision in Shoulders's direct appeal is *res judicata*, and we are not free to reconsider the issues decided therein in the absence of manifest injustice or fundamental and compelling error. We have found no such error here, and we have found no merit in any of Shoulders's other allegations of error. We therefore affirm the trial court's denial of Shoulders's petition for post-conviction relief.

AFFIRMED.

CHEZEM, J., concurs.

BARTEAU, J., dissents with separate opinion.

BARTEAU, Judge, dissenting.

On direct appeal, Shoulders argued that a jury cannot accurately assess the credibility of an accomplice-witness who testifies in exchange for the opportunity to plead guilty to a reduced charge unless the jury knows the benefit gained by that accomplice, measured by cross-examining the accomplice for his knowledge of the difference in potential sentences on the original charge and the reduced charge. The supreme court disagreed. *Shoulders v. State* (1985), Ind., 480 N.E.2d 211. But, fifteen months later the supreme court reversed its position on the issue. *Jarrett v. State* (1986), Ind., 498 N.E.2d 967.[1] Shoulders petitioned for post-conviction relief, seeking to have *Jarrett* retroactively applied to his case.

I disagree with the majority's conclusion that in this case *"res judicata* bars relitigation of an issue ... decided against a defendant on appeal but ... decided differently in a subsequent case involving a different defendant." *Majority op.* at 695–696. The majority leaps over recent cases that reject such a conclusion, reaching back instead to a 1974 case that is a quite slender reed.

Furthermore, the majority ignores the State's concession that *res judicata* does not bar relitigation of the issue. I agree

with the State, that "[a]s the defendant correctly notes, when Post–Conviction relief is sought where the issue has been adversely decided, but subsequently a change occurs in case law, then the reviewing court engages in retrospective analysis to determine whether the new rule should be retrospectively applied." State's Brief 6.[2]

The majority relies exclusively on *Layton v. State* (1974), 261 Ind. 567, 307 N.E.2d 477 (*Layton III*), in which the supreme court gave three reasons to deny post-conviction relief. The first reason sufficed to decide the case, thereby reducing the second and third to *obiter dicta.* The third reason, already lacking force as mere *dictum,* appears even further enervated on close reading.

The supreme court decided *Layton III* by refusing to review a claimed error in questioning of the jury venire, because the *voir dire* had not been recorded. Upon that pronouncement, the court resolved what it had presented as the first issue on appeal— whether the defendant had waived objection to the State's questioning of the jury venire by stipulating that *voir dire* not be recorded. Thus, the court held the issue waived. The holding of waiver rendered moot what the court had presented as the second issue—whether the guilty verdict was rendered invalid by the State's *voir*

1. *Jarrett* "implicitly overruled or at least modified" *Shoulders. Samuels v. State* (1987), Ind. App., 505 N.E.2d 120, 123 (footnote omitted). The overruling of *Shoulders* is implicit rather than express—*Jarrett* did not cite *Shoulders.*

2. At this point, it is necessary to explain that this case should be decided under the law of retroactivity existing prior to *Daniels v. State* (1990), Ind., 561 N.E.2d 487. *Daniels* adopted the view of the U.S. Supreme Court, expressed in *Teague v. Lane* (1989), 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334, *reh'g denied* that in post-conviction cases, retroactive application of new rules of criminal procedure should be limited to two severely restricted categories, neither of which would seem to include the cross-examination issue discussed in *Shoulders* and *Jarrett.*

Prior to *Daniels,* retroactivity analysis followed a tripartite test crafted by the U.S. Supreme Court and adopted in Indiana in *Fossey v. State* (1970), 254 Ind. 173, 258 N.E.2d 616. The *Fossey* test focuses on the relationship between the new rule and trial accuracy—the more

closely the rule affects the reliability of verdicts, the more likely it will be retroactively applied.

The trial court denied Shoulders' petition three weeks before our supreme court decided *Daniels.* Therefore, Shoulders' petition should have been analyzed according to *Fossey,* not *Daniels* and *Teague v. Lane.* The majority intimates that application of the wrong caselaw standard is permissible, because the decision below came only three weeks before the standard changed. I cannot concur in that suggestion. The law of retroactivity in post-conviction cases in Indiana was *Fossey,* until changed by *Daniels,* not until three weeks before *Daniels.* Moreover, Shoulders filed his petition in 1986, before both *Teague v. Lane* and *Daniels.* That Shoulders' case was decided close in time to *Daniels* resulted from the delay of 1,446 days between filing of the petition and the trial court's decision.

I note that the State, after conceding that *res judicata* did not bar Shoulders' petition, went on to analyze the case according to the *Fossey* standard.

*dire* questions. Therefore, the court's second and third reasons are properly considered *obiter dicta.* The superfluous nature of the second and third reasons appears in the court's own words: "There are two additional reasons why we cannot go to the second issue." *Layton III*, 307 N.E.2d at 479.[3]

The second additional reason, that is, the third reason overall, is quoted by the majority opinion with emphasis added:

> Secondly, the same issue, although differently assigned, *was reviewed and determined upon the defendant's direct appeal and is therefore res judicata. . . . This issue was decided against the defendant and is final, notwithstanding that [Price and Causey], cases upon which he here leans heavily for support, had not yet been decided.*

*Majority op.* at 696–697 (quoting *Layton III*, 307 N.E.2d at 479).

At first blush, that is, in the context-less format in which the majority presents them, the underlined words do support the majority holding. However, that first blush loses its radiance when the words are exposed as *obiter dicta,* and the glow fades completely upon reading *Layton III* beyond the majority's bare-bones excerpt.

*Layton III* merely reiterates the *general rule* that issues decided on direct appeal cannot be relitigated in the post-conviction forum. The question here is the existence of a retroactivity exception to the general rule, an exception to allow relitigation of an issue decided on direct appeal if subsequent case law overrules the prior decision.[4]

The majority stopped short in its reading of *Layton III.* The court there went on to *distinguish* the cases relied on by the petitioner. Because the cases which the petitioner sought to have retroactively applied to his situation were different, *no retroactivity issue was raised.* Thus, *Layton III* is simply an example of the general rule, and does not set out a *res judicata* bar to an exception founded in retroactivity.

The majority's *res judicata* bar is unsupported in our case law. To the contrary, case law recognizes a retroactivity exception. In *Sulie v. State* (1988), Ind., 522 N.E.2d 380, *reh'g denied* the supreme court remarked "Sulie has been unsuccessful in raising the issue in the federal courts *and in his original appeal,*" *id.* at 382, but nonetheless went on to the merits of retroactivity analysis, never mentioning either *res judicata* or *Layton III.* Another example of the retroactivity exception appears in the following words from our supreme court:

> Appellant, in his first appeal, argued that the evidence was insufficient [on the age element of the offense]. The Court held that appellant waived the right to appeal the issue of the sufficiency of evidence of that element. . . . Subsequent to the ren-

---

**3.** The court described the issues and its holding thus:

> I. Did the defendant waive his objection to the State's interrogating the prospective jurors with reference to their beliefs concerning the death penalty, by stipulating that the examination not be reported?
> II. Was the verdict of guilty . . . invalid by reason of the State's having so interrogated the veniremen?
> . . . .
> What the defendant is saying is that it is not necessary for us to know the specific questions asked of the prospective jurors, since we know generally that they were related to death penalty sentiments. But we do not know that such questions were asked, only that they were objected to and that the trial

> judge did not consider them to be improper. We are asked, then, to conclude that certain questions were asked from a record that merely disclosed an in limine motion to preclude them and an adverse ruling upon the motion. This we cannot do.
> There are two additional reasons why we cannot go to the second issue.

*Layton III*, 307 N.E.2d at 478–79.

**4.** To say the exception would allow relitigation of an already argued issue is not to say that reversal would be warranted. Rather, the post-conviction court would evaluate the petitioner's argument in light of the tripartite test from *Fossey v. State* (1970), 254 Ind. 173, 258 N.E.2d 616 or *Daniels v. State* (1990), Ind., 561 N.E.2d 487. *See* n. 2, *supra.*

dition of that opinion this Court overruled waiver caselaw of this genre, and ruled that insufficiency of evidence is so fundamental that it may be raised for the the first time on appeal. *The post-conviction court below agreed with appellant on this point and reached the merits* of his insufficiency claim, but ... determined that the claim was not sustainable. This appeal followed.

*Finch v. State* (1983), Ind., 454 N.E.2d 856, 857 (citations omitted) (emphasis added).

In *Finch,* the supreme court reached the merits, never mentioning *res judicata* or *Layton III.* In a case where the supreme court did mention *res judicata,* it did so in a manner tending to preclude the holding of the majority here. In that case, *Osborne v. State* (1985), Ind., 481 N.E.2d 376, the court suggested that an issue raised on direct appeal can be considered anew in post-conviction proceedings if the petitioner supplies "additional argument." *Id.* at 381 ("Appellant's claim that his sentence constitutes cruel and unusual punishment was raised and determined by this Court on direct appeal. Since no additional argument is presented by appellant, our earlier decision is *res judicata* and thus this issue is not reviewable in post-conviction proceedings." (citation omitted)).

The court of appeals has also reached the merits in post-conviction cases urging retroactive application of new law in situations where the same issue had been previously argued on direct appeal. *See Powell v. State* (1991), Ind.App., 574 N.E.2d 331; *Terry v. State* (1990), Ind.App., 563 N.E.2d 1301 (*res judicata* barred petition because new rule was both announced and *applied* in direct appeal); *Berry v. State* (1974), 162 Ind.App. 626, 321 N.E.2d 207, *trans. denied.*

In my opinion, the proper course here is remand to the trial court for a decision whether applying *Jarrett* to Shoulders' case, according to the *Fossey* tripartite test, would require reversal of Shoulders' conviction. Hence, I express no opinion on the other issues raised in this appeal.

The majority opinion seizes upon an afterthought in an obscure case and ignores both contrary case law and the State's concession that *res judicata* does not bar Shoulders' petition. I respectfully dissent.